# Matter of Victor Ramon VELAZQUEZ-HERRERA, Respondent

File A35 874 084 - Seattle

*Decided May 20, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  For purposes of the ground of removal set forth at section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2000), the term "crime of child abuse" means any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a person under 18 years old or that impairs such a person's physical or mental well-being, including sexual abuse or exploitation.

(2) Whether an alien is removable on the basis of a conviction for a "crime of child abuse" is determined by the elements of the alien's offense, as reflected in the statutory definition of the crime or admissible portions of the conviction record.

FOR RESPONDENT:  Matthew B. Weber, Miami, Florida

AMICI CURIAE:[1]  Ann Benson, Esquire, Seattle, Washington

FOR THE DEPARTMENT OF HOMELAND SECURITY: Rhonda M. Dent, Appellate Counsel

BEFORE: Board Panel: COLE and HESS, Board Members. Concurring Opinion: PAULEY, Board Member.

COLE, Board Member:

In a decision dated November 27, 2002, an Immigration Judge ordered the respondent removed from the United States as an alien convicted of a "crime of child abuse" under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2000), on the basis of his 2001 Washington conviction for assault in the fourth degree. On April 14, 2004, we issued a brief decision adopting and affirming the Immigration Judge's order of removal, and the respondent thereafter filed a petition for review with

---

[1]  We acknowledge and appreciate the very helpful briefs submitted by the parties and by amici curiae, representing the Washington Defender Association's Immigration Project and supporting groups.

the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit has now remanded the matter to "allow [the Board] an opportunity to issue a precedential opinion regarding the definition of 'child abuse' under 8 U.S.C. § 1227(a)(2)(E)(i)" and also to "determine whether the full range of conduct proscribed by Washington's fourth degree assault statute falls within the definition of 'child abuse.'" *Velazquez-Herrera v. Gonzales*, 466 F.3d 781, 783 (9th Cir. 2006). Both parties filed additional briefs on remand, amici curiae submitted a brief in support of the respondent, and a three-member panel of the Board heard oral argument on June 28, 2007. In consideration of the Ninth Circuit's mandate, the intervening precedents of that circuit, the record of conviction, and the arguments of the parties, we will vacate our decision of April 14, 2004, sustain the respondent's appeal, and terminate the removal proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico and a lawful permanent resident of the United States. In May 1998 a criminal information was filed in the Superior Court of Clallam County, Washington, charging the respondent with first-degree child molestation in violation of section 9A.44.083 of the Washington Revised Code. That charge was later withdrawn, however, and in September of 1999 the respondent was convicted of fourth-degree assault in violation of section 9A.36.041 of the Washington Revised Code, under an amended information charging that he "did intentionally assault another, to-wit: D.E.C., a female child whose date of birth is 08/18/1992, who was five years old at the time." For that offense the respondent was sentenced to a term of imprisonment of 365 days.

In October 1999 the former Immigration and Naturalization Service, now the Department of Homeland Security ("DHS"), initiated removal proceedings on the basis of the respondent's conviction, charging him with deportability as an alien convicted of a "crime of violence" aggravated felony pursuant to sections 101(a)(43)(F) and 237(a)(2)(A)(iii) of the Act, 8 U.S.C. §§ 1101(a)(43)(F) and 1227(a)(2)(A)(iii) (Supp. II 1996). Shortly thereafter the respondent filed a motion with the Clallam County Superior Court requesting permission to withdraw his guilty plea on the ground that he had not been properly advised of its potential immigration consequences. On December 31, 1999, the Superior Court granted the motion and vacated the respondent's conviction. In response to the vacatur of the respondent's conviction, the Immigration Judge entered a January 12, 2000, decision terminating the removal proceedings, and we affirmed that decision on January 10, 2001.

In November 2001 the respondent was once again convicted of fourth-degree assault, pursuant to a plea agreement that identified the elements of his offense by reference to the amended information that had been filed in September 1999. As noted previously, that amended information charged the respondent with assaulting a 5-year-old child. For this revised offense, the Superior Court sentenced the respondent to 360 days in jail, a term of imprisonment that was less than that required to support an aggravated felony charge under section 101(a)(43)(F) of the Act.

Nevertheless, in March 2002 the DHS initiated the present removal proceedings, charging that the respondent's November 2001 conviction was for a "crime of child abuse" under section 237(a)(2)(E)(i) of the Act.[2] Shortly thereafter the respondent returned to the Clallam County Superior Court, and in May 2002 the prosecuting attorney filed a "third amended information" with that court, in which all references to the juvenile status of the respondent's victim had been crossed out by hand. In September 2002, moreover, a superseding third amended information was filed with the Superior Court to replace the hand-altered document that had been submitted earlier. This third amended information was back-dated to November 9, 2001, and was accepted into the conviction record by the Superior Court.

After a number of evidentiary hearings, the Immigration Judge determined that he was obliged to accept the third amended information into the record, despite his concern that the State criminal proceedings had been manipulated in order to affect the immigration consequences of the respondent's crime.[3] Having accepted the third amended information into the record, the Immigration Judge nonetheless sustained the "crime of child abuse" charge based on his determination that "assault on a child is abuse, even if it is only a minor touching . . . because of the unfair advantage that an adult has over a child." In support of his determination that the DHS had proven the existence of a conviction for "child abuse," the Immigration Judge relied on two pieces of evidence: (1) the trial court's judgment, which specified that the respondent was obliged to pay $0 in restitution to "D.E.C., child victim herein"; and (2) the trial court's "no contact" order, issued at the time of sentencing in

---

[2] The DHS also charged the respondent with deportability as an alien convicted of a "sexual abuse of a minor" aggravated felony, *see* section 101(a)(43)(A) of the Act, but this charge was withdrawn in April 2002.

[3] The DHS has not challenged the Immigration Judge's reliance on the third amended information, so we have no present occasion to decide whether a conviction that has been modified solely on the basis of immigration hardships, rather than on the basis of a substantive or procedural defect in the original judgment, would continue to serve as a valid factual predicate for removal, despite its modification. *Cf. Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003).

November 2001, which ordered the respondent to have no contact with the victim and her mother, and which identified the victim's date of birth as "8/18/92," making her 9 years old at the time of sentencing and 5 years old at the time of the underlying offense. After sustaining the "crime of child abuse" charge, the Immigration Judge then denied the respondent's application for cancellation of removal in the exercise of discretion and ordered him removed to Mexico.

The respondent appealed, and we adopted and affirmed the Immigration Judge's decision in a brief order, but the Ninth Circuit remanded the matter, concluding that we had failed to adopt a "'statutory interpretation [of the term "crime of child abuse"] that carries the "force of law."'" *Velazquez-Herrera v. Gonzales*, *supra*, at 783 (quoting *Miranda Alvarado v. Gonzales*, 449 F.3d 915, 922 (9th Cir. 2006)). *But see Ochieng v. Mukasey*, 520 F.3d 1110, 1114-15 (10th Cir. 2008) (holding, in accordance with *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), that the definition of "child abuse" set forth in dicta in a precedent decision of this Board was entitled to deference because it was based on a permissible construction of the statute); *Loeza-Dominguez v. Gonzales*, 428 F.3d 1156 (8th Cir. 2005) (same). In this regard, the Ninth Circuit observed that the Board had never formally defined the concept of "child abuse" in a precedent decision, except in dicta, and that the Immigration Judge's opinion, which equated the concept of "child abuse" with any assault committed against a child, embodied a broader understanding of the concept than the Board had articulated. On remand and at oral argument, therefore, we have requested that the parties espouse a position regarding the proper meaning of the term "crime of child abuse" and identify the sources of law that support their understanding of the term.

## II. ISSUES

The question presented is whether the respondent's Washington conviction for fourth-degree assault constitutes a valid factual predicate for a "crime of child abuse" charge under section 237(a)(2)(E)(i) of the Act. In order to settle that ultimate question, we must resolve two subsidiary questions. First, we must decide what the term "crime of child abuse" means in the context of section 237(a)(2)(E)(i) of the Act. And having done so, we must then decide whether the evidence contained in the present administrative record is sufficient to establish that the respondent was convicted of conduct falling within the scope of that term.

## III. APPLICABLE LAW

Section 237(a) of the Immigration and Nationality Act provides as follows, in pertinent part:

Classes of Deportable Aliens
Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:
. . . .
(2) Criminal offenses
. . . .
(E) Crimes of domestic violence, stalking, or violation of protection order, crimes against children and [sic]
(i) Domestic violence, stalking, and child abuse
Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable. For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section 16 of title 18, United States Code) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

Section 237(a)(2)(E)(i) was enacted pursuant to section 350(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-640 ("IIRIRA"), and is effective with respect to convictions occurring after September 30, 1996. *See id.* § 350(b); *Matter of Gonzalez-Silva*, 24 I&N Dec. 218, 220 (BIA 2007).

## IV. DISCUSSION

### A. Meaning of "Crime of Child Abuse"

Our inquiry into the meaning of the statutory term "crime of child abuse" begins with the statutory language itself. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984). If that language constitutes a plain expression of congressional intent, it must be given effect. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*, at 842-43. When Congress's intent is not plainly expressed,

however, it is our duty to resolve any ambiguities and fill any statutory gaps in a reasonable manner, at least insofar as they pertain to portions of the statute that fall within the scope of our expertise. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-33 (1999) (following *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*, at 843-44). In doing so, we bear in mind that "'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

Section 237(a)(2)(E)(i) covers any alien convicted of "a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment." Significantly, Congress chose to define "crime of domestic violence" at considerable length, specifically cross-referencing one Federal criminal statute, 18 U.S.C. § 16, and incorporating by reference a host of other laws (State, Federal, tribal, or local) that define the legal scope of domestic relationships. Yet the statute's other operative terms, including "crime of child abuse," were left undefined, triggering the negative inference that Congress deliberately left them open to interpretation. *INS v. Cardoza-Fonseca*, *supra*, at 432. At the same time, "child abuse" is a well-recognized legal concept, distinct from the independent terms "child" and "abuse," and we presume that Congress intended it to be construed as such. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 408 (1991) (holding that the term "supervised release," which was used in the Anti-Drug Abuse Act of 1986 but not defined therein, was to be defined by reference to the well-established meaning of the term as set forth in earlier statutes bearing on similar subject matter). Thus, although the ordinary, contemporary, and common meaning of the term "child abuse" governs our analysis, that meaning is necessarily informed by the term's established legal usage. *Morissette v. United States*, 342 U.S. 246, 263 (1952).

Our analysis is further influenced by the presumption that the Federal immigration laws are intended to have uniform nationwide application and to implement a unitary Federal policy. *Kahn v. INS*, 36 F.3d 1412, 1414 (9th Cir. 1994) (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43-44 (1989)). Therefore, absent clear congressional guidance to the contrary, the meaning of the term "crime of child abuse" will be determined by reference to a "flexible, uniform standard that reflects the federal policies underlying" section 237(a)(2)(E)(i) of the Act, and not by reference to legal classifications that vary from State to State. *Kahn v. INS*, *supra*, at 1414-15; *see also Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991, 995 (BIA 1999).

In seeking to identify the "federal policies" underlying section 237(a)(2)(E)(i), we find it significant that the provision was enacted pursuant to the IIRIRA as part of an aggressive legislative movement to expand the

criminal grounds of deportability in general and to create a "comprehensive statutory scheme to cover crimes against children" in particular. *Matter of Rodriguez-Rodriguez*, *supra*, at 994. In addition to the changes brought about through the enactment of section 237(a)(2)(E)(i), for example, Congress also expanded the aggravated felony definition to encompass offenses involving the "sexual abuse of a minor." *See* IIRIRA § 321(a)(1), 110 Stat. at 3009-627 (amending section 101(a)(43)(A) of the Act); *see also United States v. Corona-Sanchez*, 234 F.3d 449, 454 (9th Cir. 2000) (referring to the IIRIRA as "expansive legislation" and recognizing, in the aggravated felony context, that the statute was "intended to sweep a broad range of offenses" into the grounds of deportability); H.R. Rep. No. 104-828, at 505-06 (1996) (Conf. Rep.) (Joint Explanatory Statement of the Committee of Conference ). Prior to the enactment of the IIRIRA, the immigration laws did not subject aliens convicted of crimes against children to any particular disadvantage vis-à-vis other criminal aliens. By enacting section 237(a)(2)(E)(i) of the Act and other provisions augmenting the aggravated felony definition, however, Congress clearly intended to single out those who have been convicted of maltreating or preying upon children. In view of the fact that section 237(a)(2)(E)(i) of the Act is the product of a significant expansion of the grounds of deportability and was aimed at facilitating the removal of child abusers in particular, it is our view that the term "crime of child abuse" should be interpreted broadly in this context.

In 1996, when Congress enacted section 350(a) of the IIRIRA, there were seven Federal statutes defining "child abuse" and related concepts. Although the definitions in these statutes are not authoritative in construing section 237(a)(2)(E)(i) of the Act, their common characteristics nonetheless provide us with valuable insight into the types of conduct that Congress understood to be encompassed by the term "crime of child abuse." *Afridi v. Gonzales*, 442 F.3d 1212, 1216 (9th Cir. 2006) (approving the interpretive methodology followed by the Board in *Matter of Rodriguez-Rodriguez*, *supra*, which relied in part on the definition of "sexual abuse" set forth at 18 U.S.C. § 3509(a)(8) (1994) to inform the meaning of the term "sexual abuse of a minor").[4]

---

[4] Amici curiae contend that the definition of "child abuse and neglect" set forth at 42 U.S.C. § 13925(a)(2) should "significantly inform" our understanding of the meaning of the term "crime of child abuse" in section 237(a)(2)(E)(i). That definition, which was enacted pursuant to section 3 of the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960, 2964 (enacted Jan. 5, 2006) ("VAWA 2005"), defines "child abuse and neglect" narrowly to mean, in pertinent part, "any recent act or failure to act on the part of a parent or caregiver with intent to cause death, serious physical or emotional harm, sexual abuse, or exploitation, or an act or failure to act which presents an imminent risk of serious harm." As amici point out, this definition

(continued...)

Three of these seven statutes defined the term "child abuse" identically to mean "the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child";[5] a fourth defined it to mean "physical or sexual abuse or neglect of a child";[6] and a fifth stated in much greater detail that the term

> includes, but is not limited to—
> (A) any case in which—
> (i) a child is dead or exhibits evidence of skin bruising, bleeding, malnutrition, failure to thrive, burns, fracture of any bone, subdural hematoma, soft tissue swelling, and
> (ii) such condition is not justifiably explained or may not be the product of an accidental occurrence; and
> (B) any case in which a child is subjected to sexual assault, sexual molestation, sexual exploitation, sexual contact, or prostitution.[7]

A sixth statute defined the term "child abuse and neglect" to mean "the physical or mental injury, sexual abuse or exploitation, negligent treatment, or

---

(...continued)

is incorporated by reference in the only other provisions of the Act that touch upon crimes of "child abuse," both of which relate to the issuance of nonimmigrant visas to the fiancées or fiancés of United States citizens. Sections 214(d)(3)(A), (r)(5)(A) of the Act, 8 U.S.C.A. §§ 1184(d)(3)(A), (r)(5)(A) (Supp. 2008). In our judgment, the language of 42 U.S.C. § 13925(a)(2) is not a reliable indicia of what Congress intended section 350(a) of the IIRIRA to mean, because the VAWA 2005 was enacted nearly a decade after the IIRIRA, and it was intended to serve a very different purpose. As the Supreme Court has explained, "'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *Massachusetts v. EPA*, 127 S. Ct. 1438, 1460 n.27 (2007) (quoting *United States v. Price*, 361 U.S. 304, 313 (1960)). Instead, we conclude that preference must be given to "indicia of congressional intent [in existence] at the time the statute was enacted." *Ngiraingas v. Sanchez*, 495 U.S. 182, 187 (1990).

[5] 18 U.S.C. § 3509(a)(3) (1994) (relating to the rights of child victims as court witnesses); 42 U.S.C. § 3796aa-8 (1994) (relating to the awarding of grants to facilitate the closed-circuit televising of testimony of child abuse victims); 42 U.S.C. § 13031(c)(1) (1994) (requiring child abuse reporting in Federal jurisdictions). These three statutes were enacted contemporaneously pursuant to sections 225, 226, and 241(a)(2) of the Victims of Child Abuse Act of 1990, Pub. L. No. 101-647, tit. II, 104 Stat. 4792, 4798, 4806, 4813 ("VCAA").

[6] 42 U.S.C. § 13001a(5) (1994) (relating to improving the investigation and prosecution of child abuse) (enacted pursuant to section 6(b)(2) of the Juvenile Justice and Delinquency Prevention Amendments, Pub. L. No. 102-586, 106 Stat. 4982, 5029-30 (1992)).

[7] 25 U.S.C. § 3202(3) (1994) (relating to child abuse in Indian country) (enacted pursuant to section 403 of the Indian Child Protection and Family Violence Prevention Act, Pub. L. No. 101-630, tit. IV, 104 Stat. 4544, 4545-46 (1990)).

maltreatment of a child," but added limiting language confining the term to harms inflicted by "a person who is responsible for the child's welfare, under circumstances which indicate that the child's health or welfare is harmed or threatened."[8]  In contrast, the seventh statute, which defined the term "child abuse *crime*" to mean "a crime committed under any law of a State that involves the physical or mental injury, sexual abuse or exploitation, negligent treatment, or maltreatment of a child," specified that the term related to harms inflicted "by *any* person."[9] (Emphasis added.)

As this overview makes plain, the weight of Federal authority when section 237(a)(2)(E)(i) was enacted reflected an understanding that "child abuse" encompassed the physical and mental injury, sexual abuse or exploitation, maltreatment, and negligent or neglectful treatment of a child.  Among the States, moreover, there was a growing acceptance by 1996 that the concept of "child abuse" included not just the intentional infliction of physical injury, but also acts of sexual abuse or exploitation,[10] criminally negligent acts,[11] or acts causing mental or emotional harm.[12]  Similarly, the most recent edition of *Black's Law Dictionary* provides as its principal definition of "child abuse" the "[i]ntentional or neglectful physical or emotional harm inflicted on a child, including sexual molestation." *Black's Law Dictionary* 10 (8th ed. 2004).[13]

---

[8] 42 U.S.C. § 5106g(4) (1994) (enacted pursuant to section 3 of the Child Abuse Prevention and Treatment Act, Pub. L. No. 93-247, 88 Stat. 4 (1974), as amended ("CAPTA")).  We note that this definition in the CAPTA was amended shortly after the IIRIRA was enacted.

[9] 42 U.S.C. § 5119c(3) (1994) (relating to the collection of child abuse crime information and the conducting of background checks) (enacted pursuant to section 5 of the National Child Protection Act of 1993, Pub. L. No. 103-209, 107 Stat. 2490, 2493-94).

[10] *See, e.g.*, Cal. Penal Code § 11165.6 (West 1996); 325 Ill. Comp. Stat. 5/3(c) (1996); N.H. Rev. Stat. Ann. § 169-C:3(II)(a) (1996); N.Y. Fam. Ct. Act § 1012(e)(iii) (McKinney 1996); Ohio Rev. Code Ann. § 2151.031(A) (West 1996); Tex. Fam. Code §§ 261.001(1)(E)-(H) (Vernon 1996); Wash. Rev. Code Ann. § 26.44.020(12) (West 1996).

[11] *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 13-3623(B)(3), (C)(3) (1996); Colo. Rev. Stat. §§ 18-6-401(7)(a)(II), (IV), (VI), (b)(II) (1996); Fla. Stat. Ann. §§ 827.04(1), (2) (West 1996); Neb. Rev. Stat. §§ 28-707(1), (3) (1996); N.M. Stat. Ann. § 30-6-1(C) (West 1996); Utah Code Ann. §§ 76-5-109(2)(c), (3)(c) (1996).

[12] *See, e.g.*, Ala. Code § 26-14-1(1) (1996); Ark. Code Ann. § 9-30-103(3) (West 1996); Iowa Code Ann. § 232.68(2)(b) (West 1996); Ky. Rev. Stat. Ann. §§ 600.020(1), (20) (West 1996); Nev. Rev. Stat. § 200.508(3)(a) (1996); 23 Pa. Cons. Stat. Ann. § 6303(b)(1)(ii) (West 1996); R.I. Gen. Laws § 40-11-2(1) (1996).

[13] The sixth edition of *Black's Law Dictionary*, published in 1990 and in print when section 237(a)(2)(E)(i) was enacted, defined child abuse as "[a]ny form of cruelty to a child's physical, moral or mental well-being." *Black's Law Dictionary* 239 (6th ed. 1990), *quoted in Matter of Rodriguez-Rodriguez, supra*, at 996.  However, to the extent the word "cruelty" implied that an abusive act must be committed with the specific intent to inflict suffering on

(continued...)

These authorities, viewed through the prism of the enforcement-oriented purpose of section 237(a)(2)(E)(i), lead us to interpret the term "crime of child abuse" broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in prostitution, pornography, or other sexually explicit conduct; as well as any act that involves the use or exploitation of a child as an object of sexual gratification or as a tool in the commission of serious crimes, such as drug trafficking.[14] Moreover, as in the "sexual abuse of a minor" context, we deem the term "crime of child abuse" to refer to an offense committed against an individual who had not yet reached the age of 18 years. *Cf. Matter of V-F-D-*, 23 I&N Dec. 859 (BIA 2006).[15]

In 1996 a number of States limited the definition of "child abuse" to acts committed by a parent, custodian, or other person responsible for the child's care, and as we noted previously, one Federal statute—the Child Abuse Prevention and Treatment Act, Pub. L. No. 93-247, 88 Stat. 4 (1974) ("CAPTA")—did so as well. In the Federal sphere, however, this narrowing construction of child abuse was peculiar to the CAPTA and was a function of that statute's unique purpose, which was to provide *minimal* standards that would stimulate as many State governments as possible to enact legislation to prevent child abuse and to protect child abuse victims. *See* CAPTA § 4(B)(2) (setting forth standards to which States must conform in order to qualify for

---

(...continued)

a child, it was contrary to the weight of Federal and State authority in effect in 1996, under which criminally negligent acts sufficed.

[14] The concurring Board Member would adopt this definition to encompass the entire statutory phrase "crime of child abuse, child neglect, or child abandonment." While we recognize that our definition is comprehensive enough to subsume most, if not all, crimes of "child neglect," it is not as evident to us that crimes of "child abandonment" would be so encompassed. We therefore leave that question for another day.

[15] In 1996 the Federal child abuse laws, as well as the child abuse laws of 48 States and the District of Columbia, defined the term "child" to mean a person under 18 years old. *See, e.g.*, 18 U.S.C. § 3509(a)(2); 25 U.S.C. § 3202(2)(B); 42 U.S.C. § 3796aa-8(1); 42 U.S.C. § 5106g(1)(a) (1996); Ariz. Rev. Stat. § 13-3623(A)(2) (1996); D.C. Code § 22-901(a) (1996); 325 Ill. Comp. Stat. 5/3 (1996); Mo. Ann. Stat. § 210.110(3) (West 1996); R.I. Gen. Laws § 40-11-2(2) (1996); W. Va. Code § 61-8D-1(2) (1996); Wis. Stat. Ann. § 48.02(2) (West 1996).

Federal financial assistance). Furthermore, although this restrictive construction was not uncommon in the States in 1996, it was by no means universal, such that it may reasonably be deemed an intrinsic aspect of the concept of "child abuse." Accordingly, in view of our determination that Congress intended the term "crime of child abuse" to be construed broadly in the context of section 237(a)(2)(E)(i) of the Act, we do not limit the term to those offenses that were necessarily committed by the child's parent or by someone acting in loco parentis.

### B. Application to Respondent's Case

An alien's deportability under section 237(a)(2)(E)(i) of the Act depends on the existence of a "conviction" for a crime of child abuse. For nearly a century, the Federal circuit courts of appeals have held that where a ground of deportability is premised on the existence of a "conviction" for a particular type of crime, the focus of the immigration authorities must be on the crime of which the alien was *convicted*, to the exclusion of any other criminal or morally reprehensible acts he may have *committed*. *See, e.g.*, *Dalton v. Ashcroft*, 257 F.3d 200, 204-05 (2d Cir. 2001); *Goldeshtein v. INS*, 8 F.3d 645, 647 (9th Cir. 1993); *Okabe v. INS*, 671 F.2d 863, 865 (5th Cir. 1982); *Tseung Chu v. Cornell*, 247 F.2d 929, 935 (9th Cir. 1957); *Ablett v. Brownell*, 240 F.2d 625, 627 (D.C. Cir. 1957); *United States ex rel. Giglio v. Neelly*, 208 F.2d 337, 340-41 (7th Cir. 1953); *United States ex rel. McKenzie v. Savoretti*, 200 F.2d 546, 548 (5th Cir. 1953); *United States ex rel. Robinson v. Day*, 51 F.2d 1022, 1022-23 (2d Cir. 1931) (Hand, J.); *United States ex rel. Mylius v. Uhl*, 210 F. 860, 862-63 (2d Cir. 1914).

In accordance with this longstanding body of circuit precedent, we have from our earliest days espoused the same principle, resulting in an analytical approach that is essentially identical to the "categorical approach" adopted by the Supreme Court in both the sentencing and immigration contexts. *Matter of Babaisakov*, 24 I&N Dec. 306, 311 (BIA 2007) (citing *Gonzales v. Duenas-Alvarez*, 546 U.S. 183, 127 S. Ct. 815 (2007); *Shepard v. United States*, 544 U.S. 13 (2005); *Taylor v. United States*, 495 U.S. 575 (1990)); *see also, e.g.*, *Matter of Gertsenshteyn*, 24 I&N Dec. 111, 112 (BIA 2007); *Matter of Pichardo*, 21 I&N Dec. 330, 335-36 (BIA 1996); *Matter of Goodalle*, 12 I&N Dec. 106, 107-08 (BIA 1967); *Matter of W-*, 4 I&N Dec. 241, 243 (BIA 1951); *Matter of D-*, 1 I&N Dec. 190, 195 (BIA 1942).

On remand the DHS concedes that "[b]ecause the age of the victim is not an element of the crime, assault in the fourth degree in Washington does not categorically constitute a crime of child abuse." Nevertheless, the DHS argues that under the rationale of our decision in *Matter of Gertsenshteyn*, *supra*, "it

is appropriate for an immigration judge to consider any relevant and probative evidence to determine the victim's identity, age, and relationship to the offender." Thus, the DHS "suggests that the preferable formulation [of the term "crime of child abuse"] would be a broadly inclusive one . . . [that] encompasses any conviction for conduct which, *when committed against a child*, harms, exploits, maltreats or imperils the well-being of the child." (Emphasis added.)

As the DHS indicates, most "crime of child abuse" charges will be predicated on State convictions, and there are many valid reasons why State prosecutors may elect to charge child abusers under generic assault and battery statutes that do not contain elements bearing on the age of the victim. Furthermore, we are aware that prosecutors may modify charges in State criminal proceedings, sometimes even retroactively, to minimize the immigration consequences for criminal aliens. *See, e.g.*, *Beltran-Leon v. INS*, 134 F.3d 1379, 1380-81 (9th Cir. 1998); *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003). In light of these considerations, defining the term "crime of child abuse" to encompass only those State offenses that have a child victim as an element could make section 237(a)(2)(E)(i) underinclusive in certain cases. By allowing an Immigration Judge to ascertain the age of a victim in the first instance, the argument goes, we would counteract this tendency, vindicate the legislative purpose underlying section 237(a)(2)(E)(i), and mitigate any problems that might arise by virtue of the peculiarities of State law.

The principal difficulty with the DHS's position is that we simply have no authority to consider such policy matters except as they may bear on the proper interpretation of an otherwise ambiguous statute. Most importantly for present purposes, the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this proceeding arises, has found no such ambiguity and has held in a precedent decision that the "categorical approach is applicable to section 237(a)(2)(E)(i) *in its entirety*." *Tokatly v. Ashcroft*, 371 F.3d 613, 624 (9th Cir. 2004) (construing section 237(a)(2)(E)(i) of the Act as it applies to convictions for "crimes of domestic violence") (emphasis added).

As the DHS points out, we have recognized in several recent precedents that some criminal removability grounds are phrased so as to require proof of facts other than "convicted conduct," and we held with respect to two such grounds that the categorical approach need not be used to ascertain facts that are indispensable to the finding of removability but unrelated to the elements of any predicate offense. *Matter of Babaisakov*, *supra* (holding that the categorical approach does not apply to determining whether an offense caused a loss to victims of more than $10,000 within the meaning of section 101(a)(43)(M)(i) of the Act); *Matter of Gertsenshteyn*, *supra* (holding that the categorical approach does not apply to determining whether a violation of 18 U.S.C. § 2422(a) was committed for "commercial advantage" within the

meaning of section 101(a)(43)(K)(ii) of the Act).  Yet there is nothing in the language of the "crime of child abuse" clause of section 237(a)(2)(E)(i) that invites inquiry into facts unrelated to an alien's "convicted conduct." Furthermore, there is no reason to believe that application of the categorical approach will render section 237(a)(2)(E)(i) so underinclusive as to defeat the purpose of the statute.  Most States have criminal statutes that are designed to punish child abuse in its various forms, and many of these statutes protect children exclusively.

Thus, while we agree with the DHS that Congress intended section 237(a)(2)(E)(i) to be construed broadly, the statute's general purpose cannot supersede its language, which plainly focuses on those crimes of which an alien has been "convicted."  We note in this regard that Congress's broad, enforcement-oriented purposes have not prevented courts from determining that other criminal grounds of deportability are subject to the categorical approach. *See, e.g.*, *Gonzales v. Duenas-Alvarez*, 127 S. Ct. at 818 (discussing the applicability of the categorical approach in the context of a "theft offense" aggravated felony); *Medina v. Ashcroft*, 393 F.3d 1063, 1065-66 (9th Cir. 2005) (applying the categorical approach in the context of a "controlled substance violation" under section 237(a)(2)(B)(i) of the Act); *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999) (applying the categorical approach in the context of a "sexual abuse of a minor" aggravated felony).

Furthermore, when Congress enacted section 350(a) of the IIRIRA in 1996, different variations of the "categorical" approach had been applied in immigration proceedings for more than 80 years, and we must presume that Congress was familiar with that fact when it made deportability under section 237(a)(2)(E)(i) depend on a "conviction." *Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978).  Had Congress wished to predicate deportability on an alien's actual conduct, it would have been a simple enough matter to have done so. Accordingly, we conclude that the respondent's removability as an alien convicted of a "crime of child abuse" must be established categorically.

To ascertain the nature of the respondent's "convicted conduct," we confine our inquiry to the elements of his offense, as reflected in the statutory definition of the crime and admissible portions of the conviction record. *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1021 (9th Cir. 2006) (citing *Tokatly v. Ashcroft*, *supra*, at 624); *United States ex rel. Zaffarano v. Corsi*, 63 F.2d 757, 759 (2d Cir. 1933); *Matter of Esfandiary*, 16 I&N Dec. 659, 660 (BIA 1979); *Matter of Santoro*, 11 I&N Dec. 607, 608 (BIA 1966).  In May 1998, when the respondent committed the offense of which he was convicted

in 2001, section 9A.36.041 of the Washington Revised Code provided as follows, in its entirety:

> Assault in the fourth degree
>    (1) A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another.
>    (2) Assault in the fourth degree is a gross misdemeanor.

Because "assault" is not defined by statute in Washington, the meaning of the term is derived from the common law. *Clark v. Baines*, 84 P.3d 245, 247 n.3 (Wash. 2004). The Washington courts recognize three definitions of assault: """(1) an attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm."""" *Id*. (quoting *State v. Aumick*, 894 P.2d 1325, 1328 n.12 (Wash. 1995) (quoting *State v. Walden*, 841 P.2d 81, 83 (Wash. Ct. App. 1992))).

As Washington law makes clear, and as the DHS concedes, section 9A.36.041 of the Washington Revised Code does not contain any element requiring proof that an assault be committed against a person under 18 years old. Consequently, the offense does not correspond categorically to the generic definition of a "crime of child abuse" that we have here set forth: i.e., any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a *child* or that impairs a *child's* physical or mental well-being, including sexual abuse or exploitation. And while the DHS has argued that section 9A.36.041 invites a "modified" categorical inquiry because some individuals are convicted of violating that statute on the basis of assaultive conduct directed at children, the evidence contained in the present administrative record does not establish that the respondent was *convicted* of an offense that had the juvenile status of the victim as an element.

As we noted previously, the Immigration Judge relied on two items of evidence to support his determination that the respondent had been convicted of a "crime of child abuse": (1) a notation on the face of the judgment indicating that the respondent owed no restitution to his "child victim"; and (2) a "no-contact order" identifying the victim's date of birth. This evidence certainly tends to establish that the respondent's *conduct* was directed toward a child, but it does not constitute clear and convincing evidence that the respondent was *convicted* of abusing a child. Specifically, in Washington the facts upon which a restitution award may be based need only have been proven to the judge by a preponderance of the evidence. *State v. Dennis*, 6 P.3d 1173, 1175 (Wash. Ct. App. 2000). As a result, they do not constitute proof of the

defendant's "convicted conduct," which must have been proven beyond a reasonable doubt or admitted as part of a plea.

Likewise, although a "no-contact order" must bear a relationship to an offender's convicted offense, no direct causal link need be established between such an order and the crime committed. *State v. Warren*, 138 P.3d 1081, 1094 (Wash. Ct. App. 2006) (citing *State v. Llamas-Villa*, 836 P.2d 239 (Wash. Ct. App. 1992)). Thus, a no-contact order may be issued in Washington on the basis of facts that were not necessarily admitted by the defendant or proven beyond a reasonable doubt in order to establish the defendant's guilt with respect to the underlying crime.

We are mindful of the fact that the respondent entered his plea to a charge that clearly identified his victim as a child. The language of that charge may well have been significant because the Supreme Court has explained that "the details of a generically limited charging document" are generally sufficient "in any sort of case" to establish "whether the plea had 'necessarily' rested on the fact identifying the [offense] as generic." *Shepard v. United States*, *supra*, at 21. Yet as all parties recognize, we are precluded from relying on the original charge because, after these proceedings commenced, the State prosecutor removed all traces of the victim's juvenile status from the amended information and then interposed the expurgated, back-dated charge into the conviction record.

## V. CONCLUSION

In conclusion, fourth-degree assault in violation of section 9A.36.041 of the Washington Revised Code does not qualify categorically as a "crime of child abuse" under section 237(a)(2)(E)(i) of the Act, which we define as any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. Furthermore, assuming that section 9A.36.041 is divisible with respect to the "crime of child abuse" definition so as to warrant consideration of the record of conviction, the evidence relied on by the Immigration Judge to sustain the "crime of child abuse" charge in this instance was not admissible as proof of the respondent's removability because it did not establish the character of his *convicted* conduct. Thus, we find that based on those portions of the record that we are permitted to consult, the DHS has not proven by clear and convincing evidence that the respondent's offense of conviction was a "crime of child abuse" within the meaning of section 237(a)(2)(E)(i) of the Act.

Accordingly, we will vacate our prior decision in this matter, sustain the respondent's appeal, and terminate the proceedings against him.

**ORDER:** Upon reconsideration, our April 14, 2004, decision is vacated, the respondent's appeal is sustained, and the removal proceedings are terminated.

*CONCURRING OPINION:* Roger A. Pauley, Board Member

I respectfully concur. The majority opinion ably sets forth facts and reasons why the concept of a "crime of child abuse" under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2000), should be given a broad meaning. Yet, at the same time, the majority correctly finds that in light of the seeming manipulation of the respondent's criminal charges by the State authorities in this case,[1] his crime, considered under the categorical approach, nevertheless cannot be found to fall within that definition.

My concern is the following. The phrase enacted by Congress in section 237(a)(2)(E)(i) to protect children is "crime of child abuse, child neglect, or child abandonment." The definition the majority opinion adopts for "crime of child abuse" leaves little, if any, room for the language a crime of "child neglect, or child abandonment," inasmuch as the definition of "child abuse" therein encompasses "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being." *Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 512 (BIA 2008).[2]

I would treat the above-quoted phrase in section 237(a)(2)(E)(i) as denoting a unitary concept and thus apply the broad definition adopted by the majority as one that describes the entire phrase "crime of child abuse, child neglect, or

---

[1]  The State prosecutor denied manipulation in a letter submitted in response to the Immigration Judge's request, but the Immigration Judge expressly found to the contrary. ("The Court concludes that there has been an improper manipulation of the Immigration law here, and that these changes were made solely to assist the respondent in avoiding deportation."). The Immigration Judge's decision, however, was rendered prior to the issuance of *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003), and the Immigration Judge believed he had no choice but to accept the revised charges. Moreover, as noted by the majority, the Department of Homeland Security has not raised the *Pickering* issue, and it is therefore not before us.

[2] It should be noted that, broad though the definition is, it is unclear whether it extends to crimes in which a child is merely placed or allowed to remain in a dangerous situation, without any element in the statute requiring ensuing harm, e.g., a general child endangerment statute, or selling liquor to an underage minor, or failing to secure a child with a seatbelt.

child abandonment." This is also the grammatically suggested, if not compelled, reading of the provision.[3] Indeed, it appears that crimes of child neglect or abandonment are a subset of "child abuse" and, although technically redundant, were likely inserted by Congress to assure coverage of such crimes, however denominated by the State. *See Ali v. Federal Bureau of Prisons*, 128 S. Ct. 831 (2008) (discussing the rule of superfluities in the context of Congress's inclusion of reference to certain specific types of law enforcement officers, along with the all-encompassing language "any other" such officer).

---

[3] Section 237(a)(2)(E)(i) reads in pertinent part: "Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable." If the concepts of "child neglect" and "child abandonment" were intended to be separate from "child abuse," then the words "a crime of" would precede each, as occurs before "domestic violence" and "stalking."