**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERNESTO PACHECO FREGOZO,
                    *Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 05-71268

Agency No.
A079-587-885

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 12, 2009—San Francisco, California

Filed August 12, 2009

Before: David R. Thompson, Marsha S. Berzon and
N. Randy Smith, Circuit Judges.

Opinion by Judge Berzon

## COUNSEL

Samuel Uchenna Ogbu (argued), Dozie Ike Ezeife (on briefs), Emeziem & Ogbu, APC, Emeryville, California, for the petitioner.

Jem C. Sponzo (argued), Peter D. Keisler, Michelle G. Latour, Keith I. Bernstein (on briefs), U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

BERZON, Circuit Judge:

We consider whether a California conviction for misdemeanor child endangerment is a "crime of child abuse" for purposes of the federal Immigration and Nationality Act ("INA").

**I.**

In October 2000, petitioner Ernesto Pacheco Fregozo ("Pacheco") pleaded nolo contendere to one count of driving under the influence of alcohol or drugs and one count of child endangerment, both misdemeanors. According to the police reports,[1] officers observed Pacheco's car exit from a freeway at a high speed, and saw his wife, seated in the passenger seat, attempting to get the officers' attention. After a short pursuit, the vehicle pulled into a high school parking lot and stopped. There, the officers observed his frightened wife and saw his two children screaming and crying in the backseat. The officers ordered Pacheco from the car. After smelling alcohol on his breath and observing his demeanor, the officers suspected that Pacheco was intoxicated. The children indicated that they were afraid that Pacheco's erratic driving would lead to a car crash. After Pacheco refused field sobriety tests, he was arrested and booked on the charges of driving under the influence and child endangerment. Pacheco was advised of the potential immigration consequences of a nolo plea, entered the plea as to both charges, and was sentenced to fifteen days in county jail and three years' probation.

---

[1]Because the police reports were not incorporated by reference into Pacheco's nolo plea or the record of conviction, neither we nor the Board of Immigration Appeals ("BIA") may rely on them in determining whether he was convicted of a "crime of child abuse" within the meaning of the INA. *See Shepard v. United States*, 544 U.S. 13, 16 (2005); *United States v. Almazan-Becerra*, 537 F.3d 1094, 1097—98 (9th Cir. 2008). We recount the information here for purposes of background only.

In November 2001, the then-INS initiated removal proceedings, issuing a Notice to Appear that charged Pacheco as removable as an alien present in the United States without having been admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). He appeared before an immigration judge and, through counsel, admitted the factual allegations contained in the Notice to Appear and conceded his removability as charged.[2] Pacheco then applied for cancellation of removal pursuant to section 240A of the INA, 8 U.S.C. § 1229b. The government moved to pretermit the application on the ground that his misdemeanor child endangerment conviction under California Penal Code section 273a(b) was a conviction of a "crime of child abuse," rendering Pacheco statutorily ineligible for cancellation of removal pursuant to section 240A(b)(1)(c) of the INA. *See also* 8 U.S.C. § 1227(a)(2)(E)(i).[3]

The immigration judge agreed with the government and denied Pacheco's application for cancellation of removal, holding that he was convicted of an offense "involving child endangerment or child abuse or child neglect." Pacheco thereupon appealed to the BIA, which affirmed. The BIA concluded that conviction under California Penal Code section 273a(b), a conviction it described as "willful harm or injury to a child," "satisfies the meaning of child abuse as contemplated under section 237(a)(2)(E)(i) of the Act."

Pacheco timely appeals. We hold that a conviction under California Penal Code section 273a(b) is not categorically a "crime of child abuse" within the meaning of the INA and so grant the petition for review and remand for further proceedings.

---

[2]Pacheco also withdrew his previously filed applications for asylum and withholding of removal.

[3]The government does not assert that his drunk driving conviction affects Pacheco's application for cancellation of removal.

## II.

### A.

We review de novo the BIA's conclusions on questions of law—including whether a particular state conviction is a removable offense under the INA—except to the extent that deference is owed to the BIA's interpretation of the statutes and regulations it is charged with administering. *See Morales-Garcia v. Holder*, 567 F.3d 1058, 1061 (9th Cir. 2009). To determine whether a state conviction constitutes a removable offense, the BIA must determine first the elements of the offense the petitioner has been convicted of committing, and second whether the conviction falls within the definition of a removable offense under the INA. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc). The first inquiry requires the BIA to construe a state criminal statute. As the BIA has no statutory expertise in such state law matters, we review de novo its determination of the elements of the offense for which the petitioner was convicted. *See id.* The second inquiry requires the BIA to construe the INA by defining a particular removable offense and applying that definition to a petitioner's state conviction. If, in resolving the second issue, the BIA has interpreted an ambiguous INA statutory term, and rendered its interpretation in a precedential decision intended to carry the force of law, we defer under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), to the BIA's definition so long as it is reasonable. *See Marmolejo-Campos*, 558 F.3d at 908-09 (citing *United States v. Mead Corp.*, 533 U.S. 218 (2001)).

### B.

#### 1.

**[1]** Under Section 240A(b) of the INA, a nonpermanent resident is eligible for cancellation of removal if, among other

matters, he "has not been convicted of an offense under section . . . [237(a)(2)]" of the Act. 8 U.S.C. § 1229b(b)(1)(C). Among the offenses listed in section 237(a)(2) are "[c]rimes of domestic violence, stalking, or violation of protection order, [and] crimes against children." 8 U.S.C. § 1227(a)(2)(E). Specifically, the statute provides that "[a]ny alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable." 8 U.S.C. § 1227(a)(2)(E)(i).

Where, as here, the immigration statute refers to generic crimes, we apply the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether a particular state conviction falls within the generic federal definition. *See Nijhawan v. Holder*, 129 S. Ct. 2294, 2298-99 (2009); *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692 (9th Cir. 2007). Under the categorical approach, we "compare the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the [state] statute is broader than the generic federal definition," looking only at the fact of conviction and the statutory definition. *Id.* Looking beyond the title of the statute to the offense's elements, *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1125 (9th Cir. 2006) (en banc), "[i]f the statute of conviction criminalizes conduct that would not satisfy the federal definition of the crime at issue, then the conviction does not qualify as a predicate offense under the categorical approach." *Quintero-Salazar*, 506 F.3d at 692 (citing *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc)).

**[2]** Unlike the term "crime of domestic violence," the term "crime of child abuse" is not defined in the INA, and our case law has not defined the term as it is used in that statute.[4] *See*

---

[4]The BIA held Pacheco ineligible for cancellation of removal under only the "child abuse" language of section 237(a)(2)(E)(i) of the INA. We therefore do not reach the question of whether California Penal Code section 273a(b) is categorically a crime of "child neglect."

*Velazquez-Herrera v. Gonzales*, 466 F.3d 781 (9th Cir. 2006) (per curiam). The BIA has, however, recently supplied a definition of "crime of child abuse" as set forth in section 237(a)(2)(E)(i) of the INA. *See Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503 (BIA 2008). Because *Matter of Velazquez-Herrera* is a precedential opinion of the BIA intended to carry the force of law, under *Chevron*, we defer to the BIA's interpretation of "crime of child abuse," if it is reasonable. *See Marmolejo-Campos*, 558 F.3d at 908-09.

## 2.

Before examining *Matter of Velazquez-Herrera* further and applying it to the facts of this case, we pause to consider a procedural point—whether we should remand to the BIA to apply its *Matter of Velazquez-Herrera* decision rather than doing so ourselves.

The BIA had not yet decided *Matter of Velazquez-Herrera* when it issued its decision in Pacheco's appeal. In Pacheco's appeal, the BIA relied instead on its decision in *Matter of Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 996 (BIA 1999), which adopted Black's Law Dictionary's then-current definition of "child abuse" as "[a]ny form of cruelty to a child's physical, moral, or mental well-being." We subsequently held that the definition of "crime of child abuse" supplied in *Matter of Rodriguez-Rodriguez* was dictum and was not adopted in a manner that constitutes a "statutory interpretation that carries the 'force of law,' " and so did not deserve *Chevron* deference. *See Velazquez-Herrera*, 466 F.3d at 783. We remanded to the BIA to issue a precedential decision that would authoritatively define "crime of child abuse." *See id.* The Board's decision in *Matter of Velazquez-Herrera* is the product of that remand.

The government's position is that the *Matter of Velazquez-Herrera* definition is not only "consistent" with *Matter of Rodriguez-Rodriguez*, but is an "expansion" of the *Matter of*

*Rodriguez-Rodriguez* definition—in other words, *Matter of Velazquez-Herrera* potentially reaches broader conduct than did *Matter of Rodriguez-Rodriguez.* The government maintains that if we disagree, a remand to the BIA would be appropriate.

We are convinced that a remand is not necessary in this case. Aside from according *Chevron* deference to the Board's interpretation of a "crime of child abuse" in the INA, which we do, we review de novo whether the California conviction is a removable offense. This inquiry involves parsing the elements of a state criminal statute to determine whether it criminalizes conduct that falls outside of the generic federal offense, a task for which, as we have noted, the BIA lacks any particular statutory expertise that would be brought to bear on remand. *See Fernandez-Ruiz v. Gonzales*, 466 F.3d at 1133 (9th Cir. 2006) (distinguishing *INS v. Ventura*, 537 U.S. 12 (2001) (per curiam)). Morever, accepting as true the government's contention that *Matter of Velazquez-Herrera* is consistent with and broader than *Matter of Rodriguez-Rodriguez*, it follows necessarily that if, as we determine, there is no categorical match under *Matter of Velazquez-Herrera*, there is no categorical match under the narrower definition supplied in *Matter of Rodriguez-Rodriguez.*

### 3.

We therefore proceed to consider the impact of the BIA's *Matter of Velazquez-Herrera* opinion on this case. *Matter of Velazquez-Herrera* emphasizes that "child abuse" is a "well-recognized legal concept, distinct from the independent terms 'child' and 'abuse,' " and presumed "that Congress intended it to be construed as such." 24 I. & N. Dec. at 508. Observing that one reason Congress expanded the criminal grounds for removability was to create "a comprehensive statutory scheme to cover crimes against children," the BIA concluded that "Congress clearly intended to single out those who have

been convicted of maltreating or preying upon children." *Id.* at 509.

**[3]** The BIA therefore interpreted "crime of child abuse" to mean "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Id.* at 512. "At a minimum," the BIA indicated, "this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight [and] mental or emotional harm, including acts injurious to morals . . . ." *Id.* The BIA thus held that, although "child abuse" is not limited to the infliction of physical harm, the perpetrator's actions, either intentional or criminally negligent, must actually inflict *some* form of injury on a child.

The government contends that Pacheco's California misdemeanor child endangerment conviction is categorically a "crime of child abuse" within the meaning of the INA. California Penal Code section 273a(b) provides:

> Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor.

Any conviction under this statute, the government maintains, renders Pacheco statutorily ineligible for cancellation of removal.

**[4]** We disagree. The full range of conduct criminalized by California Penal Code section 273a(b) is broader than the

"crime[s] of child abuse" covered by section 237(a)(2)(E)(i) as construed by the BIA in *Velazquez-Herrera*. The relevant portion of the California statute criminalizes "willfully caus-[ing] or permit[ting] . . . [a] child to be placed in a situation where his or her person or health *may be* endangered." Cal. Penal Code § 273a(b) (emphasis added). This statutory language clearly reaches conduct that creates only potential harm to a child; no actual injury to a child is required for conviction.

The BIA's decision here, which characterized the offense as "willful harm or injury to a child," evidently did not appreciate the broad scope of the "endanger[ment]" prong of California Penal Code section 273a(b). For example, a parent has been held criminally liable under the statute for placing an unattended infant in the middle of a tall bed without a railing, even though the child was never injured. *See People v. Little*, 9 Cal. Rptr. 3d 446, 449-50 (Cal. Ct. App. 2004) (holding that such a situation, in addition to evidence of unsanitary household conditions, supported a conviction under section 273a(b)). The statute could also reach a neighbor's failure to fence in a swimming pool where children are present or a parent's lack of attention as a child wanders near a street or intersection.

**[5]** Moreover, the statute does not require that the circumstances create any particular likelihood of harm to a child. *See Little*, 9 Cal. Rptr. 3d at 449 ("[The child's] unsecured location on a bed without restraints or railings, and the height of the bed reasonably support a finding that the child was left in a situation where she *may have been* injured by falling off the bed." (emphasis added)). In other words, unlike the analogous felony provision, California Penal Code section 273a(a),[5] the

---

[5]California Penal Code section 273a(a) provides, with emphasis added:

Any person who, *under circumstances or conditions likely to produce great bodily harm or death*, willfully causes or permits any

misdemeanor provision does not require that the perpetrator *actually* endanger the health or safety of the child at all—the misdemeanor provision applies where the child's health or safety "may be endangered" by the circumstances. The BIA's definition of "child abuse," requiring some actual injury to a child, does not reach conduct that merely *could* place a child's health and safety at risk.

The government also relies on the principal definition of "child abuse" provided by Black's Law Dictionary, "[t]he intentional or neglectful physical or emotional harm inflicted on a child, including sexual molestation," which the BIA cited with approval in *Matter of Velazquez-Herrera. See* 24 I. & N. Dec. at 511; BLACK'S LAW DICTIONARY 10 (8th ed. 2004). This definition is not met either, and for the same reason: The California misdemeanor child endangerment offense does not require infliction of harm, but only some risk of harm.

There is an alternative definition of "child abuse" in Black's—"[a]n act or failure to act that presents an imminent risk of serious harm to a child." *Id.* The government does not here rely on this alternative definition, with good reason. Negligent or intentional conduct that places a child in situations in which *serious* harm is imminently likely could fairly constitute "impairment" of a child's well-being. The misdemeanor California statute under which Pacheco was convicted, however, does not conform to the alternative definition, as it applies "under circumstances or conditions *other than those* likely to produce great bodily harm or death." Cal. Penal Code § 273a(b) (emphasis added). *Cf. United States v.*

---

child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health *is endangered*, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.

*Pallares-Galan*, 359 F.3d 1088, 1100, 1102 (9th Cir. 2004) (holding that a misdemeanor crime of annoying or molesting a child was not categorically a crime of "sexual abuse of a minor," even though a felony version of the statute was categorically such a crime, observing that "[t]he misdemeanor statute at issue here applies to less serious conduct").

In short, California Penal Code section 273a(b) makes criminal conduct that creates only the bare potential for non-serious harm to a child, and so lies outside the reach of the "crime of child abuse" category in the INA. Because it includes such conduct, the statute goes beyond "singl[ing] out those who have been convicted of maltreating or preying upon children," and lies outside the statutory goal of "facilitating the removal of child abusers in particular." *Matter of Velazquez-Herrera*, 24 I. & N. Dec. at 509.

**[6]** We therefore conclude that a conviction under California Penal Code section 273a(b) is not categorically a "crime of child abuse" within the meaning of section 237(a)(2)(E)(i) of the INA.

## C.

Holding that the state statute of conviction is broader than the generic federal offense does not end our analysis. Where, as here, there is no categorical match, we may in some circumstances apply the modified categorical approach, looking to the record of conviction to determine whether the conduct of which Pacheco was convicted necessarily would fall under the definition of a "crime of child abuse" within the meaning of the INA. *See Mandujano-Real v. Mukasey*, 526 F.3d 585, 589 (9th Cir. 2008).

In conducting a modified categorical analysis, the inquiry is limited to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defen-

dant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). We may also consider "comparable" judicial documents of sufficient reliability. *See United States v. Snellenberger*, 548 F.3d 699, 701-02 (9th Cir. 2008) (en banc) (holding that "minute orders" are judicial documents of "equal reliability" as those listed in *Shepard* and so may be consulted in applying the modified categorical analysis). It is the government's burden "to establish clearly and unequivocally [that] the conviction was based on all of the elements of a qualifying predicate offense," through such documents and other "judicially noticeable facts." *Quintero-Salazar*, 506 F.3d at 694 (internal quotation omitted).

[7] Because the BIA concluded that Pacheco's state conviction was categorically a conviction of a "crime of child abuse," it did not conduct the modified categorical analysis. At oral argument, the government contended that if we conclude that there is no categorical match, we should remand the petition to the BIA to apply the modified categorical analysis in the first instance.[6] We agree.

We have in the past declined to remand to the BIA where only legal questions remain and these questions do not invoke the Board's expertise; all relevant evidence regarding the conviction had been presented to the BIA in earlier proceedings; and the BIA had already once determined that the offense fell within the generic definition of the crime, even if only at the categorical stage. *See Latu*, 547 F.3d at 1076; *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1079-80 (9th Cir. 2007);

---

[6]We note that where the government has not argued that the modified categorical approach applies, our inquiry ends after conducting the categorical analysis, and we need not engage in the modified categorical inquiry. *See Latu v. Mukasey*, 547 F.3d 1070, 1076 (9th Cir. 2008); *Mandujano-Real*, 526 F.3d at 589. Here, the government did contend, in its brief and at oral argument, that we must apply the modified categorical analysis if we conclude, as we do, that there is no categorical match between the generic federal offense and the statute of conviction.

*Fernandez-Ruiz*, 466 F.3d at 1133-35. Not all of these conditions are applicable here.

First, the record as currently constituted contains two possible judicially noticeable documents relevant to the modified categorical analysis—a misdemeanor criminal complaint and a minute order[7] that records Pacheco's nolo plea and sentence —that, when read together, reveal some factual ambiguity never addressed by the BIA. The criminal complaint, as initially written, charges Pacheco under California Penal Code section 273a(a), the more serious provision applicable to "circumstances or conditions likely to produce great bodily harm," and virtually parrots the statutory language for that subsection. The complaint was amended, however, to allege subsection (b) instead, as both handwriting on the complaint and the minute order reveal: A notation appears at the beginning of the minute order stating that the "People amend counts 2 & 3 to alledge [sic]: 273(a)(b) pc."[8]

One reasonable reading of the minute order is that the state amended the charges to substitute the statutory language of subsection (b) for that of subsection (a), initially alleged. We note that a no contest plea to charges that merely restate the language of a statute that is not a categorical match cannot

---

[7]We refer to the record document that memorializes Pacheco's arraignment, plea, and sentence as a "minute order" even though that term does not appear on the face of the document. The document does appear similar to the minute order relied on in *Snellenberger*, as a document "prepared by a court official at the time the guilty plea is taken (or shortly afterward), and that official is charged by law with recording proceedings accurately." 548 F.3d at 702. At oral argument, however, Pacheco contended that no document in the record properly establishes his plea or the court's judgment of conviction. For the purposes of our discussion here, we assume, without deciding, that these two documents are properly before us. Our discussion does not bind the BIA on remand to accept these documents.

[8]The recorder must have meant 273a(b), the correct statutory designation for the offense.

conclusively establish that a defendant admitted to conduct falling entirely within the generic federal definition of a crime. *See United States v. Vidal*, 504 F.3d 1072, 1088 (9th Cir. 2007) (en banc); *United States v. Lopez-Montanez*, 421 F.3d 926, 931 (9th Cir. 2005). Another possible reading is that the state only decided to charge Pacheco under subsection (b), while continuing to assert the factual allegations in the initial complaint. The BIA never addressed this critical ambiguity, but may do so on remand. If it concludes that the factual allegations of the initial complaint remained, it will then have to decide whether those allegations were admitted to, and also whether they establish the generic "crime of child abuse."

Second, the definition of a "crime of child abuse" supplied in *Matter of Velazquez-Herrera* was unavailable to the BIA when it rendered its decision in this case. The BIA therefore could not have considered Pacheco's conviction record in light of the broader definition of "child abuse" in *Matter of Velazquez-Herrera*, and so should have the opportunity to do so on remand.

We note that in conducting the modified categorical analysis on remand, the BIA should observe two points of law that have been clarified since the Board's decision in this case and are particularly relevant to Pacheco's record of conviction as currently composed. First, "to identify a conviction as the generic offense through the modified categorical approach, when the record of conviction comprises only the indictment and the judgment, the judgment must contain the critical phrase 'as charged in the Information.' " *Vidal*, 504 F.3d at 1087 (internal quotation omitted). The minute order memorializing Pacheco's plea leaves the box next to "as charged" unchecked.

Second, a defendant's nolo contendere plea pursuant to *People v. West*, 91 Cal. Rptr. 385 (Cal. 1970), does not establish factual guilt, and therefore, "unless the record of the plea proceeding reflects that the defendant admitted to facts, a

*West* plea, without more, does not establish the factual predi-
cate to support" a determination that the conviction was
generic. *Vidal*, 504 F.3d at 1089. The minute order indicates
that Pacheco entered a *West* plea.

## III.

[8] With these considerations in mind, we grant the petition
for review, and remand for further proceedings, including the
application of the modified categorical analysis.

**Petition GRANTED; REMANDED.**