[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15898
_____

Agency No. A095-580-030

JIMMY PIERRE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 18, 2018)

Before BLACK and HULL, Circuit Judges, and RESTANI,[*] Judge.

HULL, Circuit Judge:

Jimmy Pierre, a native and citizen of Haiti, petitions for review of the decision of the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's ("IJ") orders concluding that Pierre was removable and ineligible for cancellation of removal based on his felony conviction for battery of a child by throwing, tossing, projecting, or expelling blood, seminal fluid, urine, or feces, in violation of Florida Statute § 784.085.

After review and with the benefit of oral argument, we conclude that the BIA did not err in concluding that (1) Pierre was removable, because his conviction was a crime of child abuse within the meaning of 8 U.S.C. § 1227(a)(2)(E)(i), (2) Pierre was ineligible for cancellation of removal, because his conviction was a crime involving moral turpitude ("CIMT") within the meaning of 8 U.S.C. § 1227(a)(2)(A)(i), and (3) the IJ did not deprive Pierre of due process by granting the government's motion to pretermit his application for cancellation of removal.  Accordingly, we deny the petition.

---

[*]Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

## I.  LEGAL BACKGROUND

The Immigration and Nationality Act ("INA") makes removable "[a]ny alien who at any time after admission is convicted of . . . a crime of child abuse, child neglect, or child abandonment."  8 U.S.C. § 1227(a)(2)(E)(i).

As to cancellation of removal, the INA further provides that the Attorney General may cancel the removal of an otherwise deportable alien if the alien (1) has been a lawful permanent resident in the United States for at least five years, (2) has resided in the United States continuously for at least seven years after being admitted in any status, and (3) has not been convicted of an aggravated felony.  Id. § 1229b(a).  However, as to the second requirement of continuous residence for seven years, "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien has committed" any of several types of offenses, including a "crime involving moral turpitude."  Id. §§ 1229b(d)(1), 1182(a)(2)(A)(i)(I).  Pierre's Florida conviction occurred before he had resided here continuously for seven years, triggering the "stop time rule" in the second requirement if his conviction was a CIMT.

Accordingly, all parties agree that (1) Pierre is removable if he was convicted of a crime of child abuse, and (2) he is not eligible for cancellation of removal if he was convicted of a CIMT.  The primary dispute in this case is

3

whether Pierre's conviction under Fla. Stat. § 784.085 falls within the definitions of "crime of child abuse" and "crime involving moral turpitude."

## II.  IMMIGRATION PROCEEDINGS 2012-2017

On May 15, 2004, Pierre, then aged 14, was admitted to the United States as an asylee from Haiti.[1]  On August 15, 2005, his status was adjusted to that of legal permanent resident.  On December 18, 2009, Pierre pled guilty in Florida state court to one count of battery of a child, in violation of Fla. Stat. § 784.085.  Pierre was sentenced to five years' probation.

Florida Statute § 784.085 is entitled "Battery of child by throwing, tossing, projecting, or expelling certain fluids or materials."  Fla. Stat. § 784.085.  Under the statute, battery of a child occurs when a person "knowingly cause[s] or attempt[s] to cause a child to come into contact with blood, seminal fluid, or urine or feces by throwing, tossing, projecting, or expelling such fluid or material."  Id. § 784.085(1).

Notably, for both the completed crime (causing actual contact) and the attempt crime (attempting to cause contact), the statute requires that the defendant commit the overt act of throwing, tossing, projecting or expelling the bodily fluids or feces.  If contact occurs, the defendant is guilty of causing contact.  If the defendant throws, tosses, projects, or expels the fluids or feces, but misses and no

---

[1] Pierre originally was granted derivative asylum, which was derivative of his father's asylee status.

contact occurs, the defendant is guilty of an attempt to cause contact by the proscribed overt act. Either way, the defendant must have thrown, tossed, projected or expelled blood, seminal fluid, urine, or feces, and the target of the overt act must be a child.

## A. Preliminary Hearings

In July 2012, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Pierre with removability under 8 U.S.C. § 1227(a)(2)(E)(i) for having the above Florida conviction for "a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment."[2]

Pierre, represented by counsel, appeared before an IJ on August 14, 2012. Pierre admitted the factual allegations in the notice to appear, but contested his removability, arguing that his Florida conviction was not a crime of child abuse. The IJ adjourned to allow the parties to brief that issue. At the next hearing, on September 13, 2012, the IJ concluded that Pierre was removable because "the particular offense in this case is battery on a child because it involves particular elements mentioned in a statute . . . [and] is a crime of child abuse."

---

[2] Pierre was also initially charged as removable under 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien convicted of two CIMTs, based on the same battery conviction under Fla. Stat. § 784.085. That charge was withdrawn.

5

Pierre next appeared before an IJ on April 25, 2013.  At that hearing, Pierre requested additional time to apply for cancellation of removal, and stated that he wished to "reserve the opportunity to look into filing asylum, [and] withholding [of] removal."  The IJ set a deadline of July 24, 2013 "for the [cancellation of removal] application and all supporting documents."  The government asked whether Pierre would also be pursuing an asylum application.  Pierre replied that he "[did not] know if the Government is going to have any issue as to the eligibility for the [cancellation of removal]," so he "would just like to reserve any possible form of relief."  The IJ informed Pierre that the July 24, 2013 deadline would also apply to an asylum application.  Pierre, through counsel, replied, "That's fine, Your Honor."

## B.    April 30, 2015 Merits Hearing

Pierre applied for cancellation of removal on January 25, 2014, but did not apply for any other forms of relief from removal, such as asylum.  A hearing on the application was held on April 30, 2015.

At the hearing, the IJ issued two oral decisions concerning Pierre's removability and eligibility for cancellation of removal.  The IJ also denied Pierre's request for additional time to apply for an alternate form of relief from removal.  We discuss these decisions in turn.

In his first oral decision, the IJ concluded that Pierre was removable because his Florida conviction matched the generic definition of child abuse, which the BIA has described as "any offense involving an intentional, knowing, reckless or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." See Matter of Velazquez-Herrera, 24 I&N Dec. 503, 517 (BIA 2008).

The IJ acknowledged that Fla. Stat. § 784.085 criminalizes both attempted battery of a child and actual battery of a child. But the IJ concluded that this did not make the statute divisible, because "both the actual crime and the inchoate crime would fit the general definition." This was so, the IJ explained, because, under Florida law, the prosecution "must prove the existence of an overt act as necessary to support a conviction for attempt." See Thomas v. State, 531 So. 2d 708, 709-10 (Fla. 1988). Thus, "even if the crime were [an] inchoate offense, the commission of the overt act against a child would, at a minimum, inflict some level of mental or emotional harm to the child."

In his second oral decision, the IJ concluded that Pierre was ineligible for cancellation of removal because "battery on a child is a crime involving moral turpitude and falls under the auspices of [8 U.S.C. § 1182]."

On the day of the hearing, the government moved to pretermit the application for cancellation of removal, arguing that Pierre was ineligible for that relief.  The government argued that Pierre did not meet the statutory requirement of seven years' continuous presence in the United States, because his conviction under Fla. Stat. § 784.085 was a CIMT, which triggered the "stop time rule" of the INA.  See 8 U.S.C. § 1229b(d)(1).

In his second decision, the IJ agreed with the government that Pierre's conviction for a CIMT "cuts him off from establishing . . . seven years of lawfully residing in the United States before the commission of the offense," and that Pierre therefore was "precluded statutorily from establishing eligibility for cancellation of removal."

Because Pierre was ineligible for cancellation of removal, the IJ granted the government's motion to pretermit Pierre's application for cancellation of removal.

## C.    Pierre's Request for Continuance

At the merits hearing, Pierre's counsel argued that he had not had "sufficient time to develop" an opposition to the government's motion to pretermit, because "[the government] just submitted it today."  In response, the IJ noted that Pierre's counsel had been on the case for "at least two years."

Counsel argued that Pierre should be allowed time to file an application for asylum, withholding of removal, and relief under the United Nations Convention

8

against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). The IJ asked why that application had not already been filed. Counsel replied that he was under the impression that cancellation of removal was going to be the best possible application, and that the issue of eligibility for cancellation of removal had not been raised in over two years.

The IJ did not grant counsel's request for more time to file for alternate forms of relief from removal and ordered Pierre removed.

## D.    Appeal to the BIA

Pierre appealed the IJ's decisions to the BIA. Pierre identified three separate grounds for the appeal: (1) that the IJ erred in determining that Pierre's battery conviction was a crime of child abuse; (2) that the IJ erred in determining that Pierre's battery conviction was a CIMT; and (3) that the IJ abused his discretion in allowing the government to file its motion to pretermit on the day of the merits hearing, rather than 15 days in advance as required by Executive Office for Immigration Review ("EOIR") rules, and in denying Pierre a continuance to allow him time to respond to the government's motion to pretermit.

## E.    The BIA's August 9, 2016 Decision

On August 9, 2016, the BIA dismissed Pierre's appeal. The BIA first concluded that a battery of a child conviction under Fla. Stat. § 784.085 "categorically constitutes a crime of child abuse within the meaning of [the INA]."

9

The BIA pointed out that at a minimum, a child abuse conviction is one "involving the infliction on a child of physical harm, even if slight," or "mental or emotional harm." See Velazquez-Herrera, 24 I&N Dec. at 512. The BIA reasoned that "[t]hrowing, tossing, projecting, or expelling personal bodily fluids or feces onto a child not only includes a substantial risk of mental or emotional harm to the child, but also carries a significant risk that the child will be exposed to fluid-borne or fecal pathogens." The BIA concluded that the statute falls within the generic definition of child abuse, as it describes an act that "impairs a child's physical or mental well-being." See Velazquez-Herrera, 24 I&N Dec. at 517.

The BIA also affirmed the IJ's determination that § 784.085 constitutes a CIMT. The BIA explained that a CIMT is a crime that is "'inherently base, vile, or depraved,' and can include the infliction of harm on 'a person whom society views as deserving of special protection, such as a child.'" See Matter of Sanudo, 23 I&N Dec. 968, 970, 972 (BIA 2006). The statute at issue, the BIA reasoned, qualifies as a CIMT because it is "explicit that the perpetrator must have knowingly engaged in acts of 'throwing, tossing, projecting or expelling' bodily fluids or feces onto a child." This is "substantially beyond simply permitting a child to come into contact with such things." Because Pierre was convicted under the Florida battery of a child statute before he had been in the United States

10

continuously for seven years, the BIA affirmed the IJ's conclusion that Pierre was not eligible for cancellation of removal.

The BIA also found that Pierre had not shown good cause for a continuance. First, the BIA concluded that due process did not require allowing Pierre more time to respond to the government's motion to pretermit, because, regardless of whether a response to the motion was filed, the IJ, in considering Pierre's own application for cancellation of removal, would nonetheless have been obligated to consider Pierre's statutory ineligibility for the requested relief. The BIA noted that, in any event, Pierre had not set forth any viable argument as to why he would be eligible for cancellation of removal. Second, the BIA concluded that no continuance was warranted to allow Pierre to apply for asylum, withholding of removal, or CAT relief, because Pierre had ample "opportunity to submit all applications for relief prior to the time of the final hearing."

Pierre timely filed this petition for review of the BIA's decisions.

## III. DISCUSSION

### A.    Standard of Review

Whether a conviction qualifies as a "crime of child abuse" or a "crime involving moral turpitude" under the INA is a question of law for the Court. See Vuksanovic v. U.S. Att'y Gen., 439 F.3d 1308, 1311 & n.3 (11th Cir. 2006). We review de novo such questions of law, subject to the principles of deference

11

articulated in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984).  Arevalo v. U.S. Att'y Gen., 872 F.3d 1184, 1187 (11th Cir. 2017).

If an INA term or provision is undefined or ambiguous, and the BIA has interpreted that term or provision in a published, precedential decision, we defer to the BIA's interpretation under Chevron, as long as it reflects a permissible construction of the INA statute.  See Negusie v. Holder, 555 U.S. 511, 516-17, 129 S. Ct. 1159, 1163-64 (2009); Perlera-Escobar v. Exec. Office for Immigration, 894 F.2d 1292, 1296 (11th Cir. 1990).

## B.    Crime of Child Abuse

We first address whether a battery on a child conviction under Fla. Stat. § 784.085 constitutes a crime of child abuse within the meaning of the INA.

The INA does not define "child abuse."  See Velazquez-Herrera, 24 I&N Dec. at 508.  Because the statute is silent on the issue, we may defer to the BIA's interpretation of the INA, so long as that interpretation is reasonable and consistent with the statute.  Chevron, 467 U.S. at 843, 104 S. Ct. at 2781-82; see Tovar v. U.S. Att'y Gen., 646 F.3d 1300, 1304-05 (11th Cir. 2011) (deferring to the BIA's interpretation of the INA term "sought to acquire"); Perlera-Escobar, 894 F.2d at 1296-97 (deferring to the BIA's interpretation of the INA term "on account of . . . political opinion").

The BIA has defined a "crime of child abuse" as "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being." Velazquez-Herrera, 24 I&N Dec. at 517. This definition includes, among other things, "the infliction on a child of physical harm, even if slight," as well as "mental or emotional harm, including acts injurious to morals." Id. at 512.

In determining this definition, the BIA began with the plain language of the INA itself. Id. at 507. The BIA noted the importance of reading statutory words in their context and "with a view to their place in the overall statutory scheme." Id. at 507-08 (quotations omitted). The BIA pointed out that Congress chose to define the term "crime of domestic violence" in the INA "at considerable length," while leaving other statutory terms, including "crime of child abuse," undefined. Id. at 508. The BIA concluded that this "trigger[ed] the negative inference that Congress deliberately left [the undefined terms] open to interpretation." Id.

The BIA reasoned that "child abuse" is a well-recognized legal concept, such that the BIA's consideration of the "ordinary, contemporary, and common meaning" of child abuse should be "informed by the term's established legal usage." Id. In addition, the BIA took into account the presumption that federal immigration laws are intended to have "uniform nationwide application," which should reflect the federal policies underlying the INA. Id. Looking to those

13

policies, the BIA found it "significant" that the child abuse section of the INA was "part of an aggressive legislative movement to expand the criminal grounds of deportability in general and to create a comprehensive statutory scheme to cover crimes against children in particular." Id. at 508-09 (quotation omitted). Thus, the BIA stated, "the term 'crime of child abuse' should be interpreted broadly." Id. at 509.

More recently, the BIA has explained that because the definition of child abuse includes an "act or omission that constitutes maltreatment of a child," the definition "is sufficiently broad to encompass endangerment-type crimes." Matter of Soram, 25 I&N Dec. 378, 379, 383 (BIA 2010) (concluding that the Colorado crime of endangerment, which punishes a person who knowingly or recklessly permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, categorically qualifies as a crime of child abuse). Therefore, child abuse crimes under the INA are not limited to those offenses "requiring proof of actual harm or injury to the child." Id. at 381.

With this background in mind, we now examine whether the Florida statute fits within the BIA's generic and broad definition of "child abuse." Because the statute is not divisible, we apply the categorical approach, asking whether the "least culpable conduct necessary to sustain a conviction under the statute" meets the BIA's definition of child abuse. Gelin v. U.S. Att'y Gen., 837 F.3d 1236, 1241

14

(11th Cir. 2016) (quoting Keungne v. U.S. Att'y Gen., 561 F.3d 1281, 1284 n.3 (11th Cir. 2009)).  "Under the categorical approach, we consider only the fact of conviction and the statutory definition of the offense, rather than the specific facts underlying the defendant's case."  Gelin, 837 F.3d at 1241.

Under Florida Statute § 784.085, a criminal battery of a child occurs when a person "knowingly cause[s] or attempt[s] to cause a child to come into contact with blood, seminal fluid, or urine or feces by throwing, tossing, projecting, or expelling such fluid or material."  Fla. Stat. § 784.085(1).  Even the least culpable conduct covered by the statute—knowingly attempting to cause a child to come into contact with these particular bodily fluids or feces, by the overt act of throwing, tossing, projecting, or expelling the fluids or feces—constitutes a crime of child abuse.

As an initial matter, a battery conviction under § 784.085 requires an overt act.  Indeed, this Court has held that violation of that statute "require[s] a physical act . . . directed against a person."  United States v. Young, 527 F.3d 1274, 1278 (11th Cir. 2008).  And while the statute includes attempt within its definition, Florida law requires an overt act for a conviction for attempt.  Thomas, 531 So. 2d at 709-10.  As explained above, the statutory language makes clear that the difference between the completed crime and the attempt is only that in the attempt, the child victim does not actually come into contact with bodily fluids or feces.  In other words, a defendant violates the attempt prong of § 784.085 if, for example,

15

he tosses blood or feces at a child and misses.  If the defendant does nothing, there is no attempt, no statutory violation, and no conviction.

An act that knowingly attempts to cause a child to come into contact with blood, seminal fluid, urine, or feces—whether or not the attempt is successful—carries a significant risk of physically injuring or harming the child.  As the BIA noted in this case, a child who has had blood or urine thrown at her by an adult is at substantial risk of mental or emotional harm, in addition to the possibility of physical injury through "expos[ure] to fluid-borne or fecal pathogens."  At a minimum, this repugnant type of battery or attempted battery constitutes maltreatment of a child.  See Matter of Soram, 25 I&N Dec. at 382-83.

Accordingly, applying Chevron deference to the definitions of "child abuse" found in Velazquez-Herrera and Soram, we (1) uphold them as reasonable interpretations of the INA, to the extent they apply to Pierre's case, and (2) conclude that the BIA did not err in concluding that Pierre's conviction for battery on a child constituted a crime of child abuse.[3]

---

[3] Because Pierre's conviction necessarily involved a knowing and overt act, Pierre's case does not require us to determine whether purely negligent acts with no injury to the child proscribed by a state statute constitute generic crimes of child abuse.  Compare Ibarra v. Holder, 736 F.3d 903 (10th Cir. 2013) (criticizing the BIA's definitions of "child abuse" as overly inclusive, and holding that a conviction under §§ 18-6-401(1)(a) & (7)(b)(II) of Colorado's child abuse statute for criminally negligent conduct with no injury did not fit the generic federal definition of child abuse) with Flores v. Holder, 779 F.3d 207 (2d Cir. 2015) (criticizing Ibarra, applying Chevron deference to the BIA's definitions of child abuse as reasonable interpretations of the INA, and affirming the BIA's ruling that a New York conviction under N.Y.P.L.

16

## C.    Crime Involving Moral Turpitude

We next determine whether § 784.085 describes a crime involving moral turpitude within the meaning of the INA.

Like child abuse, the term "moral turpitude" is not defined in the INA.  See Cano v. U.S. Att'y Gen., 709 F.3d 1052, 1053 (11th Cir. 2013).  This Court has concluded that moral turpitude "involves an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."  Id. (quotations and alteration omitted).  "Whether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct."  Sosa-Martinez v. U.S. Att'y Gen., 420 F.3d 1338, 1341-42 (11th Cir. 2005) (quotations omitted).

Where a state statute is not divisible, both this Court and the BIA have historically utilized the categorical approach to determine whether a conviction for a particular crime qualifies as a CIMT.  Gelin, 837 F.3d at 1241.  Using that approach, this Court previously has held that crimes such as criminal reckless conduct, aggravated battery, abuse of an elderly or disabled adult, and aggravated

§ 260.10(1) for "knowingly act[ing] in a manner likely to be injurious to the physical, mental or moral welfare of a child" qualified as a generic crime of child abuse).

17

child abuse are crimes involving moral turpitude.  See Keungne, 561 F.3d at 1287-88 (Georgia crime of criminal reckless conduct); Sosa-Martinez, 420 F.3d at 1342 (Florida crime of aggravated battery); Gelin, 837 F.3d at 1247-48 (Florida crime of abuse of an elderly or disabled adult); Garcia v. U.S. Att'y Gen., 329 F.3d 1217, 1222 (11th Cir. 2003) (Florida crime of aggravated child abuse).  Among the factors this Court has considered are the mental state required for the conviction and the vulnerability of those protected by the statute.  See Gelin, 837 F.3d at 1243.  If a conviction requires that a defendant acted knowingly or intentionally, the statute "requires a sufficiently culpable mental state to constitute a CIMT."  Id. at 1245.   Similarly, if a statute "requires an intentional act targeted at vulnerable victims," that requirement "further demonstrates that a violation of the statute is morally turpitudinous."  Id. at 1246.

Pierre's battery of a child conviction under § 784.085 means that, at a minimum, he knowingly projected blood, seminal fluid, urine, or feces at a child. Fla. Stat. § 784.085(1); see Thomas, 531 So. 2d at 709-10.  By its plain terms, the statute requires that Pierre had a knowing mental state.  In the battery context, Florida courts have interpreted the requirement of a "knowing" mental state to mean the defendant must have had specific intent.  See, e.g., T.S. v. State, 965 So. 2d 1288, 1290 (Fla. Dist. Ct. App. 2007).  And Florida law mandates that a statute "give[] a person of ordinary intelligence fair notice of what constitutes forbidden

conduct . . . . measured by common understanding and practice." <u>Sieniarecki v.</u>
<u>State</u>, 756 So. 2d 68, 74 (Fla. 2000) (quotations omitted).  Thus, although
§ 784.085 does not expressly tie the knowing mental state to each element of the
crime, it is apparent that a defendant cannot be convicted under § 784.085 unless
he knew that he was (1) projecting (2) bodily fluids or feces (3) at a child.  <u>See</u>
<u>Gelin</u>, 837 F.3d at 1246 ("[I]t is apparent that, measured by common understanding
and practice, perpetrators must have subjective knowledge of their victims'
vulnerable status.").

In any event, we need not rely solely on Pierre's culpable mental state or the
vulnerable status of his victim in order to decide this issue.  The inherent nature of
deliberately projecting bodily fluids or feces at a child is base and vile, and
"contrary to the accepted and customary rule of right and duty between man and
man."  <u>Cano</u>, 709 F.3d at 1053.  We agree with the BIA that this conviction
categorically constitutes a CIMT.

We note Pierre's argument that the act of expelling urine on a child's
jellyfish sting, in order to alleviate the pain, would violate the letter of § 784.085,
but would not be base or vile and thus would not be a CIMT.  Although this is true,
it does not affect our determination that the statute is categorically a CIMT.  In
order to show that a statute creates a crime outside the categorical definition, a
party must show "a realistic probability, not a theoretical possibility, that the State

19

would apply its statute" to the nongeneric conduct.  Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S. Ct. 815, 822 (2007).  To do this, the party "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."  Id.  Pierre has pointed to no instance in which the state of Florida has prosecuted a person under § 784.085 for urinating on a jellyfish sting, or indeed for any realistic conduct that would not qualify as a crime involving moral turpitude.

**4.    Due Process**

We next consider whether Pierre was deprived of due process when the IJ (1) granted the government's motion to pretermit his application for cancellation of removal based on non-eligibility, which motion the government filed the day of the merits hearing, and (2) denied Pierre's motion for a continuance to allow him more time to respond to the government's motion and to apply for alternative forms of relief.

Cancellation of removal is a discretionary form of relief, as is the continuance of removal proceedings.  See Jimenez-Galicia v. U.S. Att'y Gen., 690 F.3d 1207, 1209 (11th Cir. 2012) (cancellation of removal); Alvarez Acosta v. U.S. Att'y Gen., 524 F.3d 1191, 1197 (11th Cir. 2008) (continuance of removal proceedings).  Because the relief sought was discretionary, Pierre "was deprived of no liberty *interest*" in that relief, and can claim no deprivation of substantive due

20

process.  Alvarez Acosta, 524 F.3d at 1197 (emphasis in original).  We therefore address only whether Pierre was deprived of procedural due process.

Procedural due process entitles an alien to notice of the charges of removal against him, and to an opportunity to be heard.  Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1272 (11th Cir. 2004).  To prevail on a due process challenge, an alien must show that he was deprived of notice or an opportunity to be heard, and that he was "substantially prejudiced" by the deprivation.  Frech v. U.S. Att'y Gen., 491 F.3d 1277, 1281 (11th Cir. 2007).  An alien can demonstrate substantial prejudice by showing that, absent the violation, "the outcome would have been different."  See Ibrahim v. INS, 821 F.2d 1547, 1550 (11th Cir. 1987).

Here, as part of his claim for relief from removal, Pierre had the burden to show he was eligible for cancellation of removal.  Further, the Notice to Appear charged that Pierre was removable due to his conviction for battery of a child in violation of Fla. Stat. § 784.085, which is the same crime that made him ineligible for removal.  Nonetheless, the government filed its motion to pretermit on the morning of the hearing and thereby violated EOIR rules, which require all parties to submit filings at least 15 days in advance of an alien's individual calendar hearing.  EOIR R. P. 3.1(b)(ii)(A).  One purpose of the 15-day rule, presumably, is to ensure that parties have adequate notice of what will be presented at the hearing, so that they can prepare a response.

21

Nevertheless, we need not resolve any notice issue because Pierre has not shown that he was substantially prejudiced by the government's late motion to pretermit, and thus has not established a due process violation. Frech, 491 F.3d at 1281. Whether the government had filed its motion timely or late, the IJ necessarily would have had to consider whether Pierre's battery on a child conviction under § 784.085 was a CIMT in order to determine his eligibility for cancellation of removal. See 8 U.S.C. §§ 1229b(a), (d)(1), & 1182(a)(2)(A)(i)(I). Nothing in the record, or even in Pierre's arguments in this appeal, suggests that the IJ would have concluded differently if Pierre had been allowed to file an opposition. Indeed, the IJ made clear that denying the government's motion would mean "ignor[ing] the law." The BIA reached the same conclusion, finding that § 784.085 describes a CIMT. As discussed above, we agree. Accordingly, because Pierre has not shown that the "outcome would have been different" if the government had filed its motion to pretermit 15 days before the hearing or the IJ had granted him additional time to respond, we find no due process violation. Ibrahim, 821 F.2d at 1550.

As a final point, we conclude that the IJ's failure to give Pierre more time to file an asylum application also does not constitute a due process violation. Pierre was considering applying for asylum, withholding of removal, and CAT relief as early as April 25, 2013, more than two years before his merits hearing. The IJ

22

gave express notice of the July 2013 deadline for those applications.  Pierre had ample notice and opportunity to be heard with respect to alternative forms of relief, and thus was not deprived of due process.  Resendiz-Alcaraz, 383 F.3d at 1272.

## IV.  CONCLUSION

For the reasons stated above, we conclude that a battery of a child conviction under Florida Statute § 784.085 is categorically a crime of child abuse and a CIMT.  The Immigration Judge did not deprive Pierre of due process by denying his motion for a continuance.  Accordingly, we deny Pierre's petition for review.

**PETITION DENIED.**