[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12864
Non-Argument Calendar

_____

Agency No. A208-599-279

REYNA NICOLAS ANDRES,
S. N.,
G. N.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 24, 2021)

Before JILL PRYOR, LUCK and MARCUS, Circuit Judges.

PER CURIAM:

Reyna Nicolas Andres, proceeding pro se as the lead petitioner, and her two

children seek review of the order of the Board of Immigration Appeals ("BIA")

affirming the Immigration Judge's ("IJ") denial of her application for asylum under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a), withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 1208.16(c). In her petition, Andres argues that: (1) the agency erred in determining that she failed to establish either past persecution or a well-founded fear of future persecution; and (2) the IJ violated her Due Process rights to a fair hearing by not allowing her expert witness to testify. After careful review, we deny the petition in part and dismiss it in part.

We review the BIA's decision as the final judgment, except to the extent it expressly adopts the IJ's opinion or reasoning. Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019). When the BIA adopts the IJ's reasoning, we review both decisions. Id.

We review our own subject matter jurisdiction de novo. Avila v. U.S. Att'y Gen., 560 F.3d 1281, 1283 (11th Cir. 2009). While we retain jurisdiction over final orders of removal, we "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The exhaustion requirement is jurisdictional and precludes our review of a claimant's argument that was not presented to the BIA. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006).

We review factual findings under the substantial evidence test. Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1308 (11th Cir. 2013). Under this test, we must affirm factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Lopez v. U.S. Att'y Gen., 914 F.3d 1292, 1297 (11th Cir. 2019) (quotation omitted). We view the evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of it. Perez-Zenteno, 913 F.3d at 1306. "An argument that the agency applied the wrong legal standard in making a determination constitutes a legal question" that we review de novo. Jeune v. U.S. Att'y Gen., 810 F.3d 792, 799 (11th Cir. 2016). We also review constitutional challenges de novo, including alleged due process violations. Alhuay v. U.S. Att'y Gen., 661 F.3d 534, 548 (11th Cir. 2011).

Arguments not raised in a petitioner's initial brief are deemed abandoned. Ruga v. U.S. Att'y Gen., 757 F.3d 1193, 1196 (11th Cir. 2014); Najjar v. Ashcroft, 257 F.3d 1262, 1282 n.12 (11th Cir. 2001), overruled on other grounds by Patel v. U.S. Att'y Gen., 971 F.3d 1258 (11th Cir. 2020) (en banc). "A party must specifically and clearly identify a claim in its brief, for instance by devoting a discrete section of its argument to that claim; otherwise, it will be deemed abandoned and its merits will not be addressed." Zhou Hua Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1316 n.3 (11th Cir. 2013) (quotation omitted, alterations adopted).

3

First, we are unpersuaded by Andres's arguments that the agency erred in denying her application for asylum. The Secretary of Homeland Security or the Attorney General may grant asylum to a "refugee," as defined in the statute. 8 U.S.C. § 1158(b)(1)(A). To meet the burden of establishing eligibility for asylum, an applicant must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground, or (2) a "well-founded fear" that she will be persecuted on account of a protected ground. 8 C.F.R. § 208.13(a), (b). A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. Id. § 280.13(b)(1). The applicant must show a nexus between the alleged persecution and a protected status, i.e., "that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). "The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." Id. § 1158(b)(1)(B)(ii).

Although "persecution" is not defined in the INA, we've said that it is "an extreme concept" that "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." Shi v. U.S. Att'y Gen., 707 F.3d

4

1231, 1235 (11th Cir. 2013) (quotation omitted). Whether the facts compel the conclusion that there is persecution is determined by considering the totality of the facts and circumstances, and by considering any mistreatment cumulatively to see if it rises to the level of persecution. Id. at 1235-36. Serious physical injury is not required to prove past persecution where the petitioner demonstrates repeated threats combined with other forms of serious mistreatment. De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1009-10 (11th Cir. 2008). Further, threats against another are evidence that the petitioner suffered persecution where the act concomitantly threatens the petitioner. Id. at 1009 n.7.

In Sepulveda v. U.S. Attorney General, a bomb was detonated at the applicant's workplace shortly after her shift ended, but we declined to find past persecution because the evidence did not compel the conclusion that the bomb was directed at Sepulveda herself. 401 F.3d 1226, 1231 (11th Cir. 2005). In Sanchez Jimenez v. U.S. Attorney General, by contrast, we held that the attempted murder in that case constituted past persecution. 492 F.3d 1223, 1233-34 (11th Cir. 2007). There, the petitioner had been repeatedly threatened with his death and that of his family, and his persecutors, on motorcycles, intentionally shot at his moving car multiple times. Id. at 1233. The persecutors also had attempted to kidnap his daughter and she was not even safe when her father sent her halfway across the country. Id. In reversing the IJ's decision, we noted that the IJ omitted the details

of the shooting from his analysis and, instead, focused on the fact that the petitioner was not physically harmed. Id. We observed that whether he "fortuitously escaped from the shooters unharmed does not undermine the basic conclusion that being shot at while driving is sufficiently 'extreme' to constitute persecution" and we stressed that the persecutors followed him and intentionally shot at him. Id. So there, unlike in Sepulveda, the record compelled the conclusion that the motorcyclists' shooting was specifically directed at the petitioner.

To establish a well-founded fear of future persecution, Andres must show that there is a reasonable possibility that she will suffer persecution that cannot be avoided by relocating within the subject country if she is returned to her native country. 8 C.F.R. § 208.13(b)(2); Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1200 (11th Cir. 2009). She must establish that her fear is both subjectively genuine and objectively reasonable. Mehmeti, 572 F.3d at 1200.

To establish a nexus, Andres must "present specific, detailed facts showing a good reason to fear that [s]he . . . will be singled out for persecution on account of" the statutorily listed factor. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation and emphasis omitted). The asylum applicant, however, does not need to show that she will be singled out for persecution if she establishes a "pattern or practice" in her country of "persecution of a group of persons similarly

6

situated" and a reasonable fear of persecution on account of a protected ground based on her inclusion in that group.  8 C.F.R. § 208.13(b)(2)(iii).

To qualify for withholding of removal under the INA, Andres must demonstrate that, if removed to her country, her "life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3).  She must show it to be "more likely than not" that she will be persecuted or tortured upon returning to her country.  Carrizo v. U.S. Att'y Gen., 652 F.3d 1326, 1331 (11th Cir. 2011) (quotation omitted).  Generally, if a petitioner cannot meet the standard of proof for asylum, she will not qualify for withholding of removal.  Id.

While the agency must consider all of the submitted evidence, "it is well established that the [agency] need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented."  Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1302 (11th Cir. 2015) (quotation omitted).  "Accordingly, a decision that omits the discussion of certain pieces of evidence can nonetheless display reasoned consideration."  Id.

Here, substantial evidence supports the agency's conclusion that Andres failed to establish past persecution.  The crux of Andres's claims concerns the facts that she was a member of Cocode, a community development council; that she was working to preserve the rights of the indigenous Maya; and that in about a two-day

7

span in January 2015, (1) she was among a crowd of 300 protestors when the mayor's son fired into the crowd either aimlessly, or at the very least, without intentionally targeting her, and (2) after hiding from the gunfire, she was chased by men wielding weapons and escaped without harm. Notably, however, unlike the situation in Sanchez Jimenez, the shooter did not intentionally target Andres nor follow her when she escaped, nor did he repeatedly fire upon her. See 492 F.3d at 1233-34. As for her claim that she was chased by machete-wielding men, substantial evidence supports the IJ's conclusion that this event did not amount to persecution because Andres suffered no actual harm from this event, and she did not allege any further events. See De Santamaria, 525 F.3d at 1009-10. While she claimed that she and her family received threats in general, nothing in the record explains the nature or substance of these threats, nor who made them. Thus, Andres's claims rest on two events that did not render her detained or physically injured, and amounted to isolated incidents of intimidation. See Shi, 707 F.3d at 1235. This record, when viewed in a totality of the circumstances, does not compel the conclusion that Andres's past mistreatment constituted persecution.

Moreover, we cannot say that the agency erred in assessing the facts of her case. While Andres challenges the IJ's statement that she suffered only one serious event -- being chased by machete-wielding men in January 2015 -- the IJ described the events of January 2015 consistently with Andres's testimony and did not fail to

8

acknowledge the shooting that occurred before she was chased, nor the trauma these experiences caused her. The IJ also expressly acknowledged Andres's and her brother's testimony about threats they received. To the extent Andres argues that the IJ failed to address the mountainous terrain of her hamlet, Andres did not, in fact, make this argument to the IJ, and regardless, the IJ was not required to discuss every piece of evidence. See Indrawati, 779 F.3d at 1302; Ruga, 757 F.3d at 1196. And to the extent Andres claims the IJ erroneously failed to consider the January 2015 events to include death threats, it is irrelevant since, as we've explained, the record does not compel a conclusion that these threats rose to the level of persecution.

We also find no support for Andres's arguments that the agency misapplied the law by requiring a showing of permanent psychological harm to establish past persecution. Specifically, the IJ found that Andres was emotionally traumatized by the January 2015 shooting, but that there was no evidence that her "emotional trauma rose to the level of permanent psychological harm or that it affected her ability to continue to conduct her affairs." The IJ made this determination based on the testimony Andres gave about her life after the events of January 2015, and, notably, Andres offered no testimony about the threats she received, nor who was looking for her. As we see it, when the IJ observed that Andres could continue to conduct her affairs after January 2015, he was not requiring permanent psychological harm to establish persecution, but instead was assessing whether Andres suffered from

9

something extreme and more than an isolated incident unaccompanied by the deprivation of liberty, and found that she had not.  See Shi, 707 F.3d at 1235.

Nor do the facts compel the conclusion that Andres established a well-founded fear of future persecution.  Significantly, Andres argues in her initial brief that she could easily disappear in her small town -- undercutting any argument that she possesses an objectively reasonable fear of persecution upon her return to Guatemala.  See Mehmeti, 572 F.3d at 1200.  The record also reflects that Andres continued to live in the same small town for about ten months and was not targeted again.  Further, the mayor who instigated the shooting is no longer the mayor of her town, and Andres expressly testified that she did not know whether the new mayor was hostile towards Cocode.  In any event, the record reveals that her brother was president of a local Cocode council without receiving any physical harm -- and only one threat on an unknown date -- which undermines her arguments that being a Cocode member would result in her persecution.  Thus, the record does not compel the conclusion that Andres has an objectively reasonable fear of persecution.

Because Andres has failed to establish the persecution prong of her asylum claim, we need not reach her arguments concerning nexus or her proposed particular social group.  Moreover, because she cannot meet the lower standard for asylum,

10

she cannot meet the higher standard for withholding of removal. See Carrizo, 652 F.3d 1331. Accordingly, we deny this portion of her petition.[1]

We similarly are unconvinced by Andres's claim that the IJ violated her Due Process rights to a fair hearing by not allowing her expert witness to testify. To prevail on a due process challenge, Andres "must show that [s]he was deprived of notice or an opportunity to be heard, and that [s]he was substantially prejudiced by the deprivation." Pierre v. U.S. Att'y Gen., 879 F.3d 1241, 1253 (11th Cir. 2018) (quotation omitted). She can demonstrate substantial prejudice by showing that the outcome would have been different absent the alleged violation. Id.

Andres's Fifth Amendment arguments are without merit. She argues that her expert witness could have supported her well-founded fear of future persecution claim by explaining the factual disputes about land rights in the area and whether Andres had substantive rights to the land; whether the Guatemalan government has failed to protect its indigenous groups; and the current political atmosphere of her town. However, as for whether there was a factual dispute as to land ownership, the IJ found Andres's testimony, which included her family's land ownership, to be credible, so the expert witness's testimony was unnecessary. As for information

---

[1] In addition, we dismiss the portion of her petition that mentions CAT relief, because she did not brief the core issues concerning CAT relief to the agency, which precludes our review of her CAT claim as a jurisdictional matter. See Amaya-Artunduaga, 463 F.3d at 1250; Indrawati, 779 F.3d at 1297. We also decline to consider Andres's argument -- raised for the first time in her reply brief -- that the IJ failed to consider the Maya people's history of persecution in Guatemala or the cumulative harm of the January 2015 events. See Najjar, 257 F.3d at 1282 n.12.

11

about the political atmosphere in her town and whether Guatemala protects the Maya people, this information again was already in the record, and the IJ expressly found, based on the background evidence, that the Maya suffered from regular discrimination and that Andres's political opinion could provide a basis for relief if she were otherwise eligible. On this record, we do not see how the expert's testimony would have changed the outcome, nor, thus, how Andres suffered any prejudice. See id. This is especially true since, for purposes of her well-founded fear of future persecution claim, Andres admitted that she could easily disappear in her small town, that she lived there for ten months without harm, and that her brother continues to live there unharmed. Moreover, Andres does not allege that she was deprived of notice. See id.; Ruga, 757 F.3d at 1196. Accordingly, we deny the petition as to this issue.

**DISMISSED IN PART, DENIED IN PART.**