**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2727
_____

AAMIR MOHAMMAD SHAIKH,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(Agency No. A071-961-636)
Immigration Judge: Charles Conroy
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on
June 24, 2022

Before: McKEE,[*] RESTREPO, and BIBAS, *Circuit Judges.*

(Opinion filed: June 7, 2023)

_____

OPINION[*]
_____

_____

[*] Judge McKee assumed senior status on October 21, 2022.
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*.

Aamir Mohammad Shaikh petitions for review of a final order of removal. Shaikh contends that the Board of Immigration Appeals erroneously dismissed his appeal of the Immigration Judge's decision by incorrectly concluding that: (1) Shaikh is removable for committing a "crime of child abuse, child neglect, or child abandonment" under 8 U.S.C. § 1227(a)(2)(E)(i);[1] (2) he is not eligible for deferral of removal under the Convention

---

[1] We reject Shaikh's argument that the BIA erred by finding him removable for committing a "crime of child abuse, child neglect, or child abandonment" under 8 U.S.C. § 1227(a)(2)(E)(i). Our court has defined a "crime of child abuse" under 8 U.S.C. § 1227(a)(2)(E)(i) as:

> [A]ny offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. At a minimum, this definition encompasses convictions for offenses involving the infliction on a child of physical harm, even if slight; mental or emotional harm, including acts injurious to morals; sexual abuse, including direct acts of sexual contact, but also including acts that induce (or omissions that permit) a child to engage in ... sexually explicit conduct....

*Mondragon-Gonzalez v. Att'y Gen.*, 884 F.3d 155, 158–59 (3d Cir. 2018) (quoting *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503, 512 (BIA 2008)).
Shaikh was convicted under New York Penal Law § 130.40(2), which provides that an individual is guilty of criminal sexual act in the third degree when "[b]eing twenty-one years old or more, he or she engages in oral sexual conduct or anal sexual conduct with a person less than seventeen years old." Shaikh argues that his conviction under New York Penal Law § 130.40(2) is not a categorical match to the BIA's definition of "a crime of child abuse" because it is a strict liability crime without the requisite mens rea component and it "does not establish a sufficiently high risk of harm to a child." Pet'r's Br. 19.
Although New York Penal Law § 130.40(2) does not explicitly contain a mens rea requirement, it is not a strict liability crime because "New York law makes clear that '[a] statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability.'" *Acevedo v. Barr*, 943 F.3d 619, 625 (2d Cir. 2019) (quoting N.Y. Penal Law § 15.15(2)). New York

Against Torture; and (3) the IJ did not violate Shaikh's due process rights to a full and

fair hearing.[2] We reject most of Shaikh's claims, but we agree that the BIA erred in

---

Penal Law § 130.40(2) also establishes a sufficiently high risk of harm to a "child" because it only applies to sexual conduct with individuals under seventeen years old; thus, any violation is fully encompassed by the definition of a child under § 1227(a)(2)(E)(i), which is anyone under the age of eighteen. *Mondragon-Gonzalez*, 884 F.3d at 160. Because a conviction under New York Penal Law § 130.40(2) requires a "direct act[] of sexual conduct," it necessarily "impairs a child's physical or mental well-being." *Id.* at 158–59 (quoting *Velazquez-Herrera*, 24 I. & N. Dec. at 512); *see also Garcia v. Barr*, 969 F.3d 129, 136 (5th Cir. 2020); *Jimenez-Juarez v. Holder*, 635 F.3d 1169, 1171 n.2 (9th Cir. 2011) (distinguishing acts that create potential harm to a child, from those that involve actual sexual activity with a child, the latter of which "categorically constitutes maltreatment of a child").

[2] We reject Shaikh's argument that the BIA erred by concluding that the IJ did not violate his due process rights. "To establish a due process violation, [a petitioner] must show that he was denied 'a full and fair hearing,' which includes a 'neutral and impartial arbiter of the merits of his claim and a reasonable opportunity to present evidence on [his] behalf.'" *Abulashvili v. Att'y Gen.*, 663 F.3d 197, 207 (3d Cir. 2011) (quoting *Cham v. Att'y Gen.*, 445 F.3d 683, 691 (3d Cir. 2006)). Shaikh contends that the IJ prevented him from reasonably presenting his case by limiting and monopolizing the time for witness testimony, and that the IJ appeared biased and hostile toward him. Contrary to Shaikh's argument, the IJ did not "set an arbitrary time limit, and then take up nearly half of the allotted time questioning the primary witness." Pet'r's Br. 31. Shaikh's own witness list estimated that his counsel would need one hour for Shaikh's testimony and forty minutes for his wife's testimony. Because the IJ asked Shaikh a lot of questions, he allowed Shaikh to testify for an hour and a half. The IJ also found additional testimony unnecessary because the parties stipulated to Shaikh's detailed written declaration, which the IJ gave "full weight as if [Shaikh] had testified consistent with it on direct examination," and determined "there's no issues of credibility." AR 416.

An IJ has "every right to exercise her discretion to question [a petitioner]. However, '[a]n immigration judge has a responsibility to function as a neutral, impartial arbiter and must refrain from taking on the role of advocate for either party.'" *Abulashvili*, 663 F.3d at 207 (citation omitted) (quoting *Elias v. Gonzales*, 490 F.3d 444, 451 (6th Cir. 2007)). Here, the IJ did not advocate for either party and sought to limit both direct and cross-examination of Shaikh. While some of the IJ's questions and tone may have demonstrated an "an annoyance and dissatisfaction with [Shaikh's] testimony that is far from commendable, such a lack of courtesy and the absence of the expected level of professionalism do not rise (or, more accurately, fall) to a violation of due process." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003).

3

assessing his CAT claim. We will therefore grant the petition, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.[3]

## I.

Shaikh is a native and citizen of Pakistan, and a legal permanent resident of the United States. In December 2013, he pled guilty to one count of criminal sexual act in the third degree, in violation of New York Penal Law § 130.40(2). As a result, in October 2019, the Department of Homeland Security initiated removal proceedings, charging him as removable under section 237(a)(2)(E)(i) of the Immigration and Nationality Act for having been convicted of a crime of child abuse, child neglect, or child abandonment.

Shaikh denied the charge of removability and filed applications for relief, including an application for protection under the Convention Against Torture. Both Shaikh and his wife testified before the IJ at a hearing on the merits. In his CAT application, Shaikh expressed fear of harm if he were returned to Pakistan because he is a bisexual man.

Shaikh was sexually abused by his uncle in Pakistan beginning when Shaikh was thirteen years old. The abuse began after the uncle learned that Shaikh was having sexual relations with boys from his school. The uncle blackmailed Shaikh and threatened to tell his parents about the relationships with boys if Shaikh refused the uncle's sexual advances. Shaikh never told his parents or the police about the abuse because he was

---

[3] We focus only on the facts, findings, and conclusions of law relevant to Shaikh's CAT claim because that is the only claim we will remand to the BIA.

afraid. Shaikh feared that he would get into trouble if he told the police because same sex relationships are legally and religiously prohibited in Pakistan.

Although Shaikh's brother is the only family member in Pakistan who is aware of Shaikh's sexual orientation, many others may be aware of Shaikh's sexual orientation because he is a registered sex offender in the United States, a fact that anyone can learn by searching his name on the internet. Shaikh's wife shares Shaikh's fear and believes that Shaikh would be killed if he returned to Pakistan because he is bisexual.

## II.

The IJ found Shaikh and his wife to be credible. The IJ specifically found that Shaikh's "testimony about the harm he faced as a youth in Pakistan and the harm he currently fears is plausible and supported by country conditions evidence," and that "ample country conditions evidence about how bisexual men and the LGBTQ community are treated in Pakistan . . . sufficiently corroborated [Shaikh's] testimony."[4] Nevertheless, the IJ denied Shaikh's application for relief, and ordered him removed to Pakistan.[5]

The IJ concluded that Shaikh is not eligible for protection under the CAT because "he failed to demonstrate Pakistani authorities would torture him or acquiesce to his torture by private individuals."[6] The IJ began by "recogniz[ing] that dangerous conditions in Pakistan for members of the LGBTQ community exist," and that "[c]ountry conditions

---

[4] AR 242.

[5] The IJ concluded that Shaikh was removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(i). The IJ denied Shaikh's applications for waiver of inadmissibility, adjustment of status, asylum, withholding of removal, and protection under the CAT.

[6] AR 238.

evidence indicates that consensual same sex relations are illegal and violence against members of the LGBTQ community by nonstate actors is ubiquitous in Pakistan."[7] The IJ also went so far as to acknowledge that "[k]illings of members of the LGBTQ community are common as part of a practice of informal justice or honor killings."[8] Accordingly, the IJ found "these widespread acts of violence and killing specifically targeting members of Pakistan's LGBTQ community is an infliction of severe pain and suffering for a discriminatory purpose and thus constitutes torturous conduct."[9]

However, the IJ determined that "the record also establishes these acts of despicable violence are generally committed by nonstate actors rather than the authorities," and "does not establish the Pakistani government acquiesces to these crimes."[10] Although the IJ "recognize[d] that there is some evidence police in Pakistan generally take little to no action to investigate crimes against the LGBTQ community," the IJ found "[t]he record does not clarify, however, whether this lack of action is due to willful blindness rather than a lack of resources."[11] The IJ refused to "speculate as to the underlying causes of this inaction" because "[t]o conclude police acquiescence exists solely from the aforementioned statement is to rely on a mere supposition."[12]

---

[7] AR 251. For evidence of country conditions, and throughout the CAT claim analysis, the IJ relied on the 2019 Department of State Human Rights Report. Although it was not included in the administrative record, the IJ took administrative notice of this report without objection from Shaikh.

[8] AR 251.

[9] AR 251.

[10] AR 251.

[11] AR 251.

[12] AR 251.

Instead, the IJ focused on "some action" taken by Pakistani police "to combat violence against LGBTQ Pakistanis" to find that Shaikh had "failed to establish Pakistani authorities would acquiesce to the torture he would face at the hands of private individuals."[13] The evidence cited by the IJ consisted of an arrest of a homophobic serial killer; police departments' efforts to professionalize and modernize by providing training, including on human rights; the ability and willingness of some local authorities to protect minorities from discrimination; and a commitment in 2019 to provide five percent of office jobs in the Sindh province police department to transgender people. The IJ also recognized that while "there are draconian laws on the books regarding same-sex relationships," the prosecution of such cases is rare.[14] Because the IJ found that Shaikh failed to establish that the Pakistani government would torture him or acquiesce to private torture of him, the IJ denied his CAT claim.

On appeal, the BIA affirmed the IJ's conclusions that Shaikh was removable to Pakistan and that he had not established his eligibility for protection under the CAT.[15] The BIA did "not discern clear error in the Immigration Judge's predictive factual findings and affirm[ed] his conclusion that [Shaikh] has not established a clear probability that government officials will torture him or engage in the requisite level of acquiescence in any such torture."[16]

---

[13] AR 252.
[14] AR 252.
[15] The BIA also concluded that the IJ did not violate Shaikh's due process rights. Additionally, the BIA affirmed the IJ's conclusion that Shaikh was ineligible for a waiver of inadmissability under 8 U.S.C. § 1182(h)(1)(B) and dismissed the appeal.
[16] AR 9.

Shaikh argued to the BIA that the record established Pakistani officials would be willfully blind to his torture upon his return. He further argued that the IJ erred by solely focusing on the positive responses Pakistani officials had taken to combat violence against the LGBTQ community, while ignoring evidence that the police take little action to investigate crimes against the LGBTQ community. The BIA rejected Shaikh's arguments because the "Immigration Judge reasonably afforded weight to the different sources of country conditions evidence in the record" and "considered evidence of adverse country conditions as well as evidence related to the authority's response to such conditions."[17] Nevertheless, in concluding the government would not acquiesce to Shaikh's torture, the BIA focused on the "affirmative steps authorities have taken to protect members of vulnerable communities and improve police services."[18] Accordingly, the BIA upheld the IJ's decision that Shaikh had not established that Pakistani officials would torture him or acquiesce to his torture, "including through the concept of willful blindness."[19]

**III.**[20]

---

[17] AR 10.

[18] AR 10.

[19] AR 10.

[20] Our jurisdiction is governed by 8 U.S.C. § 1252. Where the BIA "'affirmed and partially reiterated' the IJ's determinations, we review both decisions." *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020) (quoting *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009)). "If the BIA relied on only some of the grounds given for denying relief, we review only those grounds." *Id.* We review legal determinations de novo and factual findings for substantial evidence. *Id.*

An applicant seeking relief under the CAT "must establish a likelihood of being subjected to torturous acts inflicted 'by or at the instigation of or with the consent or *acquiescence* of a public official or other person acting in an official capacity.'"[21] In *Myrie v. Attorney General*, we held that the determination of whether an applicant has met the burden for relief under the CAT requires a two-pronged analysis.[22] "In the first prong, the IJ must answer two questions: '(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?'"[23] The second prong requires "assessing whether an applicant has established that public officials will acquiesce to the feared tortu[r]ous acts of a non-state actor."[24] "The IJ must again engage in a two-part inquiry" to "determine: (1) how public officials would likely react to the harms the petitioner fears; and (2) whether this response qualifies as acquiescence under the governing regulations."[25]

Shaikh argues that the BIA and IJ erred under the second prong of *Myrie*.[26] "Because this analysis includes first a question of fact—how public officials would likely

---

[21] *Silva-Rengifo v. Att'y. Gen.*, 473 F.3d 58, 64 (3d Cir. 2007), *as amended* (Mar. 6, 2007) (quoting 8 C.F.R. § 1208.18(a)(1) (2006) (emphasis added)).
[22] *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017).
[23] *Saban-Cach v. Att'y Gen.*, 58 F.4th 716, 733 (3d Cir. Jan. 25, 2023) (quoting *Myrie*, 855 F.3d at 516).
[24] *Myrie*, 855 F.3d at 516.
[25] *Saban-Cach*, 58 F.4th at 733 (citing *Myrie*, 855 F.3d at 516).
[26] In his reply brief, Shaikh raises for the first time that the IJ and the BIA also erred under the first prong of the *Myrie* inquiry because "neither . . . actually addressed what would happen to Petitioner if he were removed to Pakistan." Pet'r's Reply Br. 5. We do not address this argument because "raising a new issue in a reply brief is untimely and insufficient to preserve an issue for review." *Nagle v. Alspach*, 8 F.3d 141, 144 (3d Cir. 1993). We also do not address this argument because the BIA never affirmed or adopted

9

react to the harms feared—and then a question of law—would this response qualify as acquiescence under the governing regulations—the BIA cannot consolidate these questions, as it must apply two different standards of review."[27] "The BIA must review the first, factual question for clear error and the second, legal question de novo."[28] A failure to first determine how public officials would likely respond to the harms a petitioner fears, before determining whether that response would qualify as acquiescence, requires a remand, as does a failure to apply the proper standard of review to each part of the analysis.[29]

Here, the BIA and the IJ failed to engage in the first part of the inquiry and conflated both steps of *Myrie* prong two. The BIA and the IJ primarily focused on steps the Pakistani government had taken to combat violence against members of Pakistan's

---

the IJ's findings as to *Myrie* prong one. *See Blanco*, 967 F.3d at 310 ("If the BIA relied on only some of the grounds given for denying relief, we review only those grounds.").

The BIA referenced a single factor relevant to *Myrie* prong one when it noted that the IJ had found that Shaikh could relocate to a part of Pakistan where he is not likely to be tortured. Because Shaikh had not challenged this determination on appeal, the BIA deemed it waived. Shaikh contends that the BIA erred in part because the IJ never made a finding that he could relocate to a part of Pakistan where he is not likely to be tortured. Rather, the IJ only noted that "some evidence . . . *suggest[s]* that the Respondent could internally relocate in Pakistan." AR 252 (emphasis added). Because Shaikh only challenges the BIA's determination under prong two of the *Myrie* inquiry, it is unnecessary to determine whether the IJ actually found that Shaikh could internally relocate and whether this issue has been waived. However, we note that for a CAT claim the ability to internally relocate is not dispositive, as it is only one of many factors considered in assessing whether it is more likely than not that an applicant would be tortured upon return to the country of removal. *See Kaplun v. Att'y Gen.*, 602 F.3d 260, 270 (3d Cir. 2010) (citing 8 C.F.R. § 208.16(c)(3)).

[27] *Saban-Cach*, 58 F.4th at 736.

[28] *Id*.

[29] *Quinteros v. Att'y Gen.*, 945 F.3d 772, 788–89 (3d Cir. 2019); *Saban-Cach*, 58 F.4th at 736.

LGBTQ community to determine that the Pakistani government would not acquiesce to Shaikh's torture. However, neither the IJ nor the BIA made any predictive findings about how public officials would likely respond to the treatment Shaikh fears. Despite the IJ's failure to make any factual findings as to how public officials would react to the harms Shaikh fears, the BIA concluded, "[W]e do not discern clear error in the Immigration Judge's predictive factual findings and affirm his conclusion that the respondent has not established a clear probability that government officials will torture him or engage in the requisite level of acquiescence in any such torture."[30] The BIA ignored the IJ's failure to engage in the first part of the inquiry and conflated both steps of *Myrie* prong two, resulting in another error—the potential application of an incorrect legal standard.[31] By applying "clear error" to nonexistent factual findings regarding how public officials would likely react to the harms Shaikh feared and then affirming the IJ's conclusion that public officials will not acquiesce to torture, the BIA failed to indicate whether it applied the de novo standard to the IJ's determination that public officials' response would not qualify as acquiescence or incorrectly applied clear error review.[32]

---

[30] AR 9.

[31] *See Myrie*, 855 F.3d at 516–17 (remanding petition because it was unclear if the BIA had applied the de novo or clear error standard to whether public officials' likely response to the harms the petitioner feared would amount to acquiescence).

[32] At the conclusion of its CAT claim analysis, the BIA again failed to indicate whether it applied the de novo or clear error standard to whether the government's response would qualify as acquiescence: "We discern no clear error in the Immigration Judge's assessment of country conditions evidence and uphold his decision that the respondent did not meet his burden of proof to show . . . acquiesce[nce] in any such torture, including through the concept of willful blindness." AR 10.

As a result, we must remand to the BIA and give the BIA the opportunity to properly apply the second prong of *Myrie* to Shaikh's CAT claim.[33]

## IV.

For the foregoing reasons, we will grant Shaikh's petition, vacate the BIA's order, and remand to the BIA for further proceedings consistent with this opinion.

---

[33] *See Silva-Rengifo*, 473 F.3d at 71.